## DYER v. STERETT.

No. 12379.

Court of Civil Appeals of Texas. San Antonio.

Feb. 27, 1952.

Rehearing Denied April 2, 1952.

Tarlton & Hale and Boone, Davis & Cox, all of Corpus Christi, for appellee.

NORVELL, Justice.

This is an appeal from a judgment rendered non obstante veredicto, providing that appellant, ·G. C. Dyer, plaintiff below, take nothing against .the defendant, W. G. Sterett. The parties will be designated as in the trial court or· by name. Plaintiff's contention is that this Court should render judgment upon the findings of the jury.

The suit is one for compensation under an oral contract of employment and the main controversy relates to the terms of the agreement. It was Sterett's contention that Dyer was employed upon a salary basis, while Dyer contends that he was to be paid a sum equal to half the profits of the business, with a drawing account to be charged against the profits if any were realized.

This suit was filed on September 26, 1947. In October, 1948, Sterett moved the court for a separate trial of issues under Rule 174, Texas Rules of Civil Procedure. This motion was granted by the presiding judge, the Hon. Jack Pope, now a member of this Court, and the following order entered bearing date of February 21, 1949:

"It is· therefore here now ordered, adjudged and decreed by the Court that there shall first be a separate trial of the issues as to whether plaintiff is entitled to share in the profits of defendant's business, and as to the period or periods during which plaintiff was entitled to share in the profits, if any, and as to the manner in which such profits should be determined, and as to plaintiff's right to an accounting; and it is further ordered that after said issues, and any issues reasonably incidental thereto, have first been tried and finally determined, then if it be thereby established that plaintiff is entitled to an accounting then it shall be determined whether an auditor shall be appointed and a separate trial thereafter shall be had for the purpose of determining the amount of money, if any, to which plaintiff is entitled."

Phillips, Horton & Williamson, and Fischer, Wood, Burney & Glass, all of Corpus Christi, L. Hamilton Lowe, Austin, for appellant.

No objection was made to the entry of this order and there is no issue raised as to its correctness upon this appeal.

The question relating to Dyer's rights to share in the profits was submitted by means of four special issues which, together with the answers thereto, are as follows:

Special Issue No. 1: Do you find from a preponderance of the evidence that during the month of March, 1945, plaintiff and defendant entered into an agreement by which they were to split the profits earned in the business in question? Answer: Yes.

Special Issue No. 2: Do you find from a preponderance of the evidence that plaintiff, G. C. Dyer, performed his obligations under said agreement, if any? Answer: Yes.

Special Issue No. 3: Do you find from a preponderance of the evidence that when plaintiff was paid $222.00 in December, 1945, he accepted the same in full payment for all sums due him by defendant to that date? Answer: No.

Special Issue No. 4: Do you find from a preponderance of the evidence that when plaintiff was paid $1,000.00 in December, 1946, he accepted same in full payment for all sums due him by defendant to that date? Answer: No.

On October 21, 1949, an interlocutory judgment was rendered upon the jury's verdict awarding to Dyer one-half of the net profits of the business from March 1, 1945, to August 1, 1947. An accounting was ordered to determine the amount due to Dyer under the judgment. The attempted appeal from the interlocutory order was dismissed by this Court. Sterett v. Dyer, Tex.Civ.App., 230 S.W.2d 461, wr. ref.

On April 17, 1951, Sterett filed an audit which was made the basis of a motion for judgment by the plaintiff. Defendant renewed a motion for judgment non obstante veredicto theretofore overruled by Judge Pope. These motions were heard by Hon. Harry M. Carroll, Judge of the 105th District Court, acting as Presiding Judge of the 94th District Court. Judge Carroll, after considering further evidence as well as that introduced prior to the entry of the interlocutory decree, in transcribed form,

concluded that the jury's findings had no support in the testimony and should be set aside. He therefore rendered judgment non obstante veredicto in favor of the defendant on September 4, 1951.

We have concluded that the trial court erred in granting judgment non obstante veredicto. The evidence does not disclose an agreement so indefinite in terms that it can not be enforced, and there is some evidence supporting the jury's findings.

The primary and only substantial objection to the manner and method of submitting the case to the jury was that it failed to inquire "as to whether there was a meeting of the minds of the parties upon an agreement to pay plaintiff fifty per cent of the profits as distinguished from splitting the profits in some other manner."

An agreement "to split the profits earned in the business" (to quote the wording of Special Issue No. 1) means, in the absence of qualification, an agreement to split the profits equally. Johnston v. Ballard, 83 Tex. 486, 18 S.W. 686; Ferguson v. Conklin, Tex.Civ.App., 51 S.W.2d 622; Graves v. White, 43 Colo. 131, 95 P. 347, 348. To split means to divide. Webster's New International Dictionary, 2d Ed. In the case last cited the same contention put forth by Sterett here was discussed by the Colorado Supreme Court. We quote from the opinion:

"Appellants' contention is thus stated in their brief: 'It is true that the plaintiff testified that one of the defendants said he would divide the commission. That statement is denied. Conceding that he said it, for the purpose of this argument, there is still no contract. If that statement were made, the one making it may have had in mind that he would give him 1 per cent. of the proceeds of the transaction, while the other person to whom it was said may have had in mind that it would be 50 per cent. A promise to divide the commission did not necessarily mean to give him half of it. It is so indefinite that no one can tell just what the statement does mean. If the defendant Ahrens had paid the plaintiff one dollar of the proceeds, he would have been

carrying out the promise to divide commissions. What was said by these parties was not sufficient to constitute a contract that will support a recovery.' We cannot agree with this contention. 'Divide' is thus defined in the Standard Dictionary: 'To sever into two parts; to cut or part into several or many pieces.' We think that by common usage the common acceptation and definition of the word 'divide,' unqualified by other words, when used by and between two contracting parties, limits the severance or partition to two equal parts. This is the construction placed upon 'divide' by the court below, which is approved."

Agreements "to split" profits, commissions or properties are not uncommon and we are unwilling to hold that such agreements are too indefinite for legal recognition.

There is some evidence supporting an agreement to split profits. King v. King, Tex.Sup., 244 S.W.2d 660; Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982. Dyer testified as follows:

"Q. State what was said at that time, about March, 1945, by you and Mr. Sterett about your going to work for him. A. As I have stated before, we had discussed it somewhat and I went on out and talked to him this time, and he told me that if I wanted to come over with him, he would give me a drawing account of $250.00 a month, five and a half cents a mile I was to use; I owned the car, and also travel expense and entertainment, which would even—would all be paid, and split the profits, which I took to be 50 per cent.

"Q. What did you say to that? A. I said, 'That is all right. That suits me,' and I walked on out. I says, 'I will be there on the 15th of April to go to work."

As an alternative proposition, Sterett attacks the jury's finding as being against the overwhelming preponderance of the evidence. Rule 324. This raises a question of fact and necessitates some review of the evidence.

Defendant's brief contains an able and persuasive argument with reference to this contention. A number of points, which have some bearing upon the problem, have no record basis as separate propositions, however. The primary issue made by the pleadings was the conflict between Dyer's contention that he was to share in the profits and Sterett's contention that Dyer was employed upon a salary basis. No request was made for an affirmative presentation of Sterett's contention, Rice v. Thompson, Tex.Civ.App., 239 S.W.2d 137, nor was an issue submitted upon the hypothesis suggested in the brief, that Dyer's recovery of profits should be restricted to business actually produced by him. Likewise, there was no request for the submission of an estoppel theory based upon the contention that an interpretation placed by one of the parties upon the agreement had been acquiesced in by the other. Humble Oil and Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355. No estoppel appears as a matter of law.

Essentially and briefly, defendant's argument is that under all the facts and circumstances disclosed by the record, the contention that Sterett had agreed to divide the profits of the business equally with Dyer is so preposterous and unreasonable that only a prejudiced mind would accept it.

It appears that both Sterett and Dyer were at one time employed by the Westinghouse Electric Company. Sterett served in an executive capacity and Dyer was a salesman under him.

Sterett left the employ of Westinghouse in 1944 to set up his own electrical supply house at Corpus Christi. He sold his home in Dallas to provide the capital to open the business, and he and his wife worked together in order to get the same started and established. This business was known as Sterett Supply Company and owned in its entirety by defendant.

When Sterett was considering leaving Westinghouse he had several conversations with Dyer, who was then working in the Corpus Christi area. No agreement was made, however, at that time, but in 1945, after Sterett had started in the business

for himself, conversations were resumed and Dyer quit Westinghouse and went to work for Sterett.

At one point in his testimony Dyer stated that his agreement with Sterett was similar to the arrangement he had with Westinghouse and it appears that with Westinghouse, Dyer's compensation was based upon the business produced by him. It also appears that there was in existence for about a month an agreement between Sterett and Dyer under which Dyer operated a branch at Harlingen, Texas, for thirty per cent of the profits realized therefrom. These circumstances have some tendency to rebut Dyer's statement that his agreement with Sterett provided that he should receive a split in the profits of business as a whole. Dyer, upon at least two occasions, was paid sums in addition to those he received every month and these were referred to as "bonuses." However, the most compelling and persuasive portion of defendant's argument is that it would be unreasonable to suppose that Sterett would put up all of the money; that both he and his wife would work to get the business on its feet and then, by means of an oral conversation, he would agree that Dyer should receive one-half of the profits of the business.

However, on plaintiff's side, in addition to Dyer's own testimony, there is the circumstance that the monthly compensation paid to Dyer by Sterett (be it a salary or a drawing account) was less than he was being paid by Westinghouse immediately before he quit and went to work for Sterett, albeit that Westinghouse was considering the cutting down of his territory, which would probably reduce his earnings. There was the circumstance also that Dyer received no interest in the firm. He was not a partner and his employment and compensation were terminable by Sterett at will. From this basis it is argued that a reasonable business man would be willing to pay a good salesman one-half or more of the profits of a firm for a limited time in order to reap the benefits of the salesman's work in the territory later on. It also appears from Dyer's testimony that he had measurably increased Sterett's business and the

number of his customers. There were witnesses who testified that Sterett had made statements in their presence that Dyer had an interest in the business or was a partner. Dyer testified that he had a good automobile and five thousand dollars when he began to work for Sterett, and that at the conclusion of the relationship he had expended the five thousand dollars and the automobile was worn out. His salary, or drawing account as he termed it, was insufficient for him to put anything away, but for such purpose he was relying upon his interest in the profits. He explained his delay in securing a share of the profits by saying that Sterett had told him that he wanted to let the profits ride so that he could build up a capital account of $100,000 so as to weather any depression that might possibly take place. Dyer said he was willing to go along with Sterett on this, as he left the business management of the firm as well as the accounting entirely to Sterett.

■ In the exercise of our fact jurisdiction to set aside jury findings as being against the overwhelming preponderance of the evidence, we are not restricted to the testimony favorable to one side only, as is the case when a point involving the factual sufficiency of the evidence is concerned, but it becomes our duty to consider all of the pertinent evidence throwing any light upon the disputed finding.

■ However, the decision on the presented point of constitutional Supreme Court jurisdiction be regarded, the recent opinion in King v. King, Tex.Sup., 244 S.W.2d 660, 661, contains a statement with reference to the fact jurisdiction of the Courts of Civil Appeals which is in accord with the rule generally accepted and followed. It is pointed out that, "* * * the Court of Civil Appeals, in the exercise of its peculiar powers under the constitution and Texas Rules of Civil Procedure Nos. 451, 453, and 455, (is required) to consider and weigh all of the evidence in the case and to set aside the verdict and remand the cause for a new trial, if it thus concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust—this,

regardless of whether the record contains some 'evidence of probative force' in support of the verdict. * * * The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict."

The applicable rule is stated by Texas Jurisprudence with a wealth of supporting authorities, as follows:

"The appellate court will set aside the verdict and findings of a jury only in cases where they are so against such a preponderance of the evidence as to be clearly wrong, or show clearly that the conclusion reached was the result of some passion, prejudice, or improper motive or in such obvious conflict with the justice of the case as to render them unconscionable." 3B Tex.Jur. 455, Appeal and Error, § 940.

The fact that an appellate court after a review of the evidence may have reached a different conclusion from that of the jury or the trial judge sitting without a jury is not sufficient basis for setting aside the verdict or finding. Crawford v. Beaver-Electra-Refining Co., Tex.Civ.App., 273 S.W. 892; Canales v. Clopton, Tex.Civ. App., 145 S.W.2d 933. Nor may a Court of Civil Appeals substitute its findings for those made by the jury, Burchfield v. Tanner, 142 Tex. 404, 178 S.W.2d 681, or pass upon the credibility of witnesses as that term is generally understood, for such actions would violate the provisions of Article 1, § 15, of the Constitution of Texas, Vernon's Ann.St., which provides that "the right of trial by jury shall remain inviolate." Testimony or evidence supporting a jury finding can not be condemned as unsatisfactory unless its improbability and fallaciousness clearly appears from a scrutiny of the entire record. Perhaps further refinements or restatements of the rule serve no useful purposes. Clarity of concept often comes only after definition is followed by illustration. Cases in which the rule has been applied by this Court in overturning a jury verdict are illustrated by Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227, following Wichita Valley R. Co. v. Williams, 116 Tex. 253, 288 S.W. 425,

and Garcia v. Galindo, Tex.Civ.App., 189 S.W.2d 12, citing 3 Tex.Jur. 1097, which is essentially the same text statement as that quoted above (3B Tex.Jur. 455).

Under our system of jurisprudence certain matters are for the determination of the jury, or other fact finding agency, and, regardless of our opinion as to the comparative persuasiveness of the arguments of the respective parties, we cannot say upon the record now before us that the jury's findings disclose a lack of determining principle or are so overwhelmingly against the preponderance of the evidence as to be clearly wrong. We overrule defendant's contention that the verdict should be set aside.

Defendant's brief filed in support of the judgment non obstante veredicto and in the alternative attacking the jury's findings contains a total of twenty-one counterpoints. We can not hope to discuss all of these separately and keep this opinion within reasonable bounds. Rule 452. We have examined all of them and have arrived at the conclusion that none of them points out an error that would vitiate the jury's verdict. Many of said points have been in substance disposed of by what has already been said.

We might add that we find no error in the ruling of the court upon the argument of plaintiff's attorney to the jury. While a severance of issues had been ordered, it is apparent that from a logical standpoint there was no clear separation between the question of the existence of an agreement to split profits and the existence of profits and the possible amounts thereof. Defendant's argument was that it was unreasonable to suppose that he would have made a profit splitting agreement under the facts and circumstances of the case. Plaintiff's counsel in commenting upon the business produced by Dyer adopted an assumption that expenses would amount to six per cent of sales. This was objected to and sustained as a statement of fact. The trial court ruled, however, that counsel could adopt the same as a pure assumption in the course of his argument designed to show that the agreement contended for by Dyer was reasonable. No further assumptions

were apparently indulged in during the course of the argument. It seems to have been made entirely clear that counsel was stating an argumentative assumption and not stating a fact. While the adoption of a series of unwarranted assumptions in argument uncontrolled by the court might result in prejudice, that situation is not presented by the record before us. No abuse of the trial court's discretion in controlling the argument is shown. F. H. Vahlsing, Inc. v. Hartford Fire Ins. Co., Tex.Civ.App., 108 S.W.2d 947, 954; Texon Drilling Co. v. Elliff, Tex.Civ.App., 216 S.W.2d 824. See additional text statement referring to 41 Tex.Jur. 763, contained in 9 Tex.Jur.Supp. Pocket part, p. 70.

■ The fact that Sterett incorporated his business did not affect his liability to Dyer. Sterett testified, in effect, that it was a one-man corporation formed for tax purposes and in which he held 97% of the stock. Baca v. Weldon, Tex.Civ.App., 230 S.W.2d 552; English Freight Co. v. Knox, Tex.Civ.App., 180 S.W.2d 633.

■ Plaintiff's claim is not barred by limitation for, obviously, a cause of action did not arise in Dyer's favor until after a demand to pay over accrued profits had been made and refused. Cockburn v. Irwin, Tex.Civ.App., 88 S.W.2d 747.

We next consider plaintiff's contention that this Court should render judgment in his favor under the provisions of Rule 434. Plaintiff moved for judgment in the court below on the basis of the jury's findings, the audit filed by defendant, the auditor's testimony and the amounts theretofore paid to plaintiff. In plaintiff's brief there is set out in detail the testimony of the auditor and as an appendix thereto appears the mathematical calculations based upon the audit filed and the auditor's testimony. It is shown that one-half of the net profits realized from the business during the time Dyer was connected with and while his name was carried upon the firm's books amounted to more than $24,000, the sum for which plaintiff here prays that judgment be rendered.

Accordingly, for the reasons stated, the judgment of the trial court is reversed and judgment here rendered that plaintiff, G. C. Dyer (appellant here), do have and recover of and from defendant, W. G. Sterett (appellee here) the sum of $24,000, together with interest from September 4, 1951, (the date of the judgment in the court below), until paid at the rate of six per cent per annum.

Reversed and rendered.

POPE, J., took no part in the consideration and determination of this appeal.

## On Motion for Rehearing

NORVELL, Justice.

■ Appellee has filed herein an able and exhaustive motion for rehearing. We have again carefully examined the record in the light of this motion but remain of the opinion that our original disposition of this cause is correct. We shall not further add to the lengthy opinion filed in this cause other than to say, with reference to appellee's contention that this cause should be remanded rather than rendered, that Rule 301 provides for the rendition of a judgment non obstante veredicto under circumstances set forth therein. Rule 324 provides that, "when the judgment is rendered non obstante veredicto, or notwithstanding the jury finding on one or more special issues, the appellee may complain of any prejudicial error committed against him over his objection on such trial."

With reference to this language contained in the rule, the Supreme Court in Le Master v. Ft. Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 227, said, "We interpret the above-quoted provision to mean that where on appeal the appellate court determines that judgment non obstante veredicto was erroneously entered, such court will reverse the judgment of the trial court and enter judgment in harmony with the verdict * * *. The filing of points of error by the appellee will be treated as a necessary prerequisite to the right to have such errors considered on appeal. It will be sufficient for the appellee to present his points of error in his brief. Rules 374, 418(b), 420."

In this case we have determined that no showing vitiating the jury's findings has been made and that such findings, together

with undisputed facts, call for the rendition of a judgment for appellant. During the course of our opinion, we stated that certain points presented by appellant had no proper record basis in that the submission of certain issues had not been requested by appellee. This was intended as a statement of the actual condition of the record and should not be construed as an indication that the case was not fully developed. On the contrary, the hearing of the evidence, in accordance with the pleadings, the trial theory of defense and the issues requested in the court below, appears to have been thoroughgoing and complete. Upon the record it was our duty to render judgment upon the verdict, that is, to render such judgment as the trial court should have rendered. Rule 434.

Appellee's motion for rehearing is overruled.

POPE, J., not participating.