**PENNZOIL, Appellant,**

v.

**SOCONY MOBIL OIL COMPANY, Inc., et al., Appellees.**

**No. 5853.**

Court of Civil Appeals of Texas.

El Paso.

Oct. 18, 1967.

Rehearing Denied Nov. 29, 1967.

Jack T. Akin, P. Joseph Trimble, Maurice R. Bullock, Midland, Charles F. Heidrick, E. M. Cage, Hobert Price, Jr., Donald G. Canuteson, Dallas, Walter B. Morgan, Dillard Baker, Houston, for appellee.

## OPINION

PRESLAR, Justice.

This is an appeal from an order granting the defendants' motion for summary judgment. Involved are questions of whether appellant, as plaintiff below, was barred by the doctrines of estoppel, waiver and ratification from obtaining the relief which it sought. We reverse and remand.

All of the parties hereto are parties to two agreements to unitize their interests in some sixteen sections of land in the Coyanosa Wolfcamp Field of Pecos County, Texas, for the production of oil, gas and associated minerals. Under the terms of the agreements, the parties were to share on the production from the unit for an initial period (Phase I) on the basis of surface acreage, but would change at a later date to allocating production on the basis of the calculated minerals in place (reserves) underlying the land of each, called "Phase II". The subject matter of this suit is the date that change could be effected from allocating production under Phase I t oPhase II. The agreements were effective as of August 1, 1964, for commencement under Phase I, provided:

> "Phase II Tract Participation shall become effective as of 7:00 a.m., June 1, 1968, or at 7:00 a.m. on the first day of the sixth calendar month following the date Working Interest Owners agree that the Unitized Formation is fully developed, whichever date is earlier."

Defendant Mobil, as the operator of the Unit, in the early part of 1965 commenced efforts to change the basis of participation from Phase I to Phase II. Pursuant to these efforts, Mobil circularized the Working Interest Owners and requested them to

William L. Kerr, Kerr, Fitz-Gerald & Kerr, Midland, Baker, Botts, Shepherd & Coates, J. C. Hutcheson, III, James P. Lee, Bill Henry, Houston, for appellant.

agree that development was complete. 96.5% responded affirmatively, and a program was carried out toward effecting such change, and the date for such change was set for December 1, 1965. In late November, Pennzoil protested such change by letter to Mobil and the other Working Interest Owners, and followed such protest by this suit seeking declaratory judgment construing the agreements. Pennzoil, as a Working Interest Owner, brought this suit against all of the other Working Interest Owners asserting that it did not agree that the unitized formation was fully developed and asking the court to determine and declare that Phase II participation under the agreements cannot be instituted prior to June 1, 1968 in the absence of the agreement of all working interest owners. Pennzoil moved for summary judgment for such a construction of the agreements. Defendants, all of the other Working Interest Owners, opposed such motion on the basis that there was an absence of necessary parties, viz., owners of royalty and other mineral interests, who would be affected by a construction of the agreements. The court sustained this contention of the defendants and made no determination of Pennzoil's motion for summary judgment. Defendants also moved for summary judgment against Pennzoil, alleging that by both its action and inaction in regard to certain events leading up to the declaration that Phase II would be initiated, it was barred by the doctrines of estoppel, waiver, and ratification from questioning the interpretation placed on the agreements by them. The granting of the defendants' motion for summary judgment is what is before us on this appeal.

■ Pennzoil, as appellant, by its Point of Error No. 1, urges a construction of the agreements to mean that all owners, 100%, must agree that the unitized formation is fully developed as a prerequisite to the institution of Phase II prior to June 1, 1968. We are unable to pass on this point, for it was not presented to the trial court and, as indicated, it was specifically not passed

on for lack of necessary parties. We are unable to make any construction of the agreements which would affect the absent parties, even as the trial court's construction would have affected them. The record before us is conclusive on this court of the fact that there are absent necessary parties. Therefore, we do not pass on appellant's Point of Error No. 1.

In upholding the contention of the defendants that Pennzoil is barred by the doctrines of estoppel, ratification and waiver from maintaining its present position, the trial court necessarily found that all of the elements of at least one of those doctrines was established as a matter of law so that summary judgment was proper. With that we are unable to agree, for when each element is viewed in the light required for the granting of summary judgments, there are questions of fact as to some.

■ Basic rules governing the disposition of cases under 166–A, Texas Rules of Civil Procedure, are set out in Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., 391 S.W.2d 41 (Tex.1965), as follows:

"Rule 166–A, Texas Rules of Civil Procedure, provides that summary judgment shall be rendered if it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved aagainst him. Tigner v. First Nat'l. Bank, 153 Tex. 69, 264 S.W.2d 85 (1954); Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952). In other words, the evidence must be viewed in the light most favorable to the party opposing the motion. Valley Stockyards Co. v. Kinsel, 369 S.W.2d 19 (Tex.Sup. 1963); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954). If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted. All conflicts in the evi-

dence are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. Cowden v. Bell, 157 Tex. 44, 300 S.W.2d 286 (1957)."

And for a full discussion of the summary judgment procedure, see "What the Heck in Two Respects", by Justice Zollie Steakley of the Supreme Court, in Vol. 30, No. 8, p. 697, Texas Bar Journal (Sept. 22, 1967).

By its suit Pennzoil, as plaintiff, sought to have the court construe the agreements of the parties, to settle the question of whether or not unanimous agreement of the Working Interest Owners was required to institute Phase II. The effect of the trial court's judgment is that the right to have the contracts construed has been lost because of the course of conduct of the one seeking the construction prior to the time such construction is sought. The judgment does not specify the basis of denying the relief sought, other than the granting of the defendants' motion for summary judgment, and the gist of such motion was that plaintiff had "ratified the procedure used" by defendants, and by its 'aches and unreasonable delay "waived" any right to complain, and "is now estopped as a matter of law from questioning the interpretation placed on the Unit Agreement and Unit Operating Agreement by all other Working Interest Owners."

Prior to institution of Phase II, whenever it was to be accomplished, certain preliminary things had to be done—selection of consulting engineers, a determination by them of the minerals in place under the various tracts of the Unit, and an allocation to each tract of its proportionate part, etc. These matters were set out in the agreements, and it is alleged that as these steps were taken toward institution of Phase II, Pennzoil remained silent, and that on two occasions it took an active part. The affidavit and exhibits attached to defendants' motion for summary judgment (affidavit made by F. S. Wright, of Mobil) sets out that on June 2, 1965 Mobil sent a telegram to all Working Interest Owners requesting them to formally agree that the unitized formation was fully developed, and that by letter of June 7, 1965, Mobil wrote all Working Interest Owners:

"In reply to our telegram of June 2, 1965, this will advise that Working Interest Owners having a participation of 96.5% in the Coyanosa Wolfcamp Unit have agreed as of June 4, 1965, that the Unitized Formation is fully developed and that determination of Phase II Participation should start immediately.

"Under the terms of Section 6.2.4 of the Coyanosa Wolfcamp Unit Agreement, Phase II Participation will become effective as of 7:00 a. m., December 1, 1965.

"The two consultants (H. J. Gruy and D. R. McCord) have commenced their work on the determination of Phase II Participation."

The affidavit also sets out that a meeting was held to select consultants, which Pennzoil did not attend, but that by letter dated May 11, 1965, it proposed the names of three such consultants, and that representatives of Pennzoil attended and participated in two meetings of Working Interest Owners held on September 7 and September 21, 1965, at which the reports of two of the consultants were discussed and instructions were given to them; that on November 22, 1965, the final report of the consultants was received and forwarded the same day to all Working Interest Owners, and that on November 26, 1965, Pennzoil's letter was received stating that any effort, at the present time, to institute Phase II Participation would be contrary to the terms of the Unit Agreement; and the affidavit states: "It was in reliance upon the agreement of the Working Interest Owners that the Unitized Formation was fully developed that prompted the charge to the aforementioned consultants to make their studies for the purpose of determining Phase II Participation", and the fee (paid by all Working Interest Owners) of such consultants was $58,733.53.

The opposing affidavit of Pennzoil (by its representative, W. A. Hover) expresses the opinion that development of the field was not complete, and in some detail described what drilling or development was going on during the period of time of the proceedings above described; that the limits of the field had not been established by dry holes, and that additional drilling on proven locations was still necessary and were provided for in a proposed budget by Mobil in late September 1965, and attached to the affidavit is correspondence from Mobil to the other operators in regard to pending and proposed development. Much of what is said in this regard has no bearing on the questions presented by the summary judgment procedure. Following the rules that the evidence must be viewed in the light most favorable to the party opposing the motion, and all conflicts in the evidence are disregarded and the evidence which tends to support the position of the opposing party is accepted as true, some significance must attach to the following from the Hover affidavit. He says that because Pennzoil could not agree that development was complete, it did not reply to Mobil's telegram of June 2, 1965; that it is true that Pennzoil did not, prior to November 23, 1965, challenge the procedure being followed by Mobil to change to Phase II; that the reason for that was that it was not until late October that it made an independent review of the Unit Agreement and consulted counsel and then became convinced that the procedure being followed was improper; that it never occurred to him that a company of Mobil's standing would, either through ignorance or design, disregard the provisions of the Unit Agreement; that it was not his intention to approve the procedure by his actions in sending representatives to the meetings of September 7 and 21, 1965; and that he does not believe, as implied by Mr. Wright, that the money paid to the consultants was wasted.

While the parties hereto speak of no dispute as to the facts—that is not to say there is no dispute about the ultimate facts which must exist to establish each element of the doctrines which control the case. Such elements are made up of one or more or a whole bundle of the undisputed facts. The judgment being that Pennzoil, as plaintiff, seeking declaratory judgment for construction of the agreement of the parties, is barred from the relief sought by the doctrines of waiver, ratification, or estoppel, it is necessary to examine such doctrines.

■ The principles or elements of equitable estoppel are set forth in 22 Tex.Jur.2d 668 in the following language:

"To constitute an equitable estoppel or estoppel in pais, there must have existed (1) a false representation or concealment of material facts, (2) made with knowledge, actual or constructive, of those facts, (3) to a party without knowledge, or the means of knowledge, of those facts, (4) with the intention that it should be acted on, and (5) the party to whom it was made must have relied or acted on it to his prejudice. The basis of estoppel is deception, and in its absence there can be no estoppel in pais."

Basically these are the governing principles, as set out in Gulbenkian v. Penn (supra), although various shades of the terms used may be found in the reported cases, most of which are discussed in Champlin Oil & Refining Company v. Chastain, 403 S.W.2d 376 (Tex.1965). We deem these to be the elements which must co-exist if the plaintiff is estopped in the case before us, and we do so with the realization that each asserted instance of estoppel is different from any other and must depend on its particular facts.

Appellees urge that the material fact concealed by Pennzoil, which established element number (1), is that Pennzoil agreed with Mobil's interpretation of the agreements as expressed in its letter of June 7th— 96.5% having agreed, we are now ready for Phase II. One appellee takes the position that the first element is established because the conduct of Pennzoil could only be cal-

culated to convey one or both of the following: (a) that Pennzoil agreed that the unitized formation was fully developed, or (b) that Pennzoil agreed with Mobil's interpretation of Article 6.2 as expressed in Mobil's letter of June 7th. We think the evidence is against any belief that Pennzoil agreed that the field was fully developed. It was specifically asked to so agree by Mobil's telegram of June 2, which read:

"IN ACCORDANCE WITH ARTICLE 6 OF THE COYANOSA WOLFCAMP UNIT AGREEMENT MOBIL RECOMMENDS THAT THE WORKING INTEREST OWNERS AGREE THAT THE UNITIZED FORMATION IS FULLY DEVELOPED AND THAT THE DETERMINATION OF PHASE II PARTICIPATION BE STARTED IMMEDIATELY. YOUR APPROVAL BY RETURN WIRE IS REQUESTED."

Pennzoil did not respond to that request, and thereafter the correspondence between the parties pointed up Pennzoil's position by reciting that 96.5% of the Working Interest Owners had agreed. For purposes of summary judgment determination, we must look to the affidavits and their attached exhibits, and Mr. Hover says Pennzoil never agreed that the field was fully developed. Nothing points to concealment by Pennzoil of its position on field development. As to concealment by Pennzoil of the fact that it was in agreement with Mobil's interpretation of the agreement (100% agreement not required), it must be noted that Pennzoil never stated its position on that. It remained silent, so that its position would have to be what the other parties made it, stated by them and not denied by Pennzoil, when it was under a duty to do so. Appellees maintain that Mobil's letter of June 7th created a duty to speak, and when Pennzoil remained silent, it was concealing from appellees its own interpretation of the contract and causing appellees to believe it agreed with theirs. In this connection it should be noted that Mobil's letter did not specifically deal with the construction of the contract. Mobil's letter of June 7th did not say—we construe the contract not to require 100% agreement. Construction of the contract was not the subject of the letter. Had it been the subject of the letter, or specifically mentioned, then Pennzoil would have had actual knowledge, or at least would have been put on notice, that there was a question of interpretation existing. Mobil's letter was to advise that 96.5% had agreed—to report the results of its telegraphic inquiry—and it inferred that percentage met contract requirements, as they were going ahead. Mr. Hover says in his affidavit that it never occurred to him that a party of Mobil's standing would, either through ignorance or design, disregard the provisions of the agreement. However lame an excuse this may seem to be, it bears on the duty to speak lest estoppel arise from silence. The matter is discussed in the majority opinion, on motion for rehearing, page 403 of Champlin Oil & Refining Company v. Chastain (supra), as follows:

"* * * Ordinarily, when one contracting party discovers or becomes aware of a fact or circumstance affecting the contract, he must make disclosure of such fact or circumstance to the second contracting party before he may assert an estoppel based upon the non-action of the second party. If full disclosure be made, an estoppel could arise under certain circumstances, even though the second party by inattention, neglect or wanton carelessness, failed to realize the situation and act accordingly. On the other hand, if the second party (the one against whom the estoppel is asserted) has knowledge or information of facts sufficient to put him upon inquiry which if reasonably pursued would lead to the discovery of the controlling fact, —in this instance, the use of the plant allocation formula,—said second party is in effect charged with actual knowledge of such controlling fact because the circumstances are such that notice of such fact is necessarily imputed to him. 2 Pome-

roy's Equity Jurisprudence (5th Ed.) 613, § 596. Such notice is imputed actual notice and will support an estoppel. '[A]ctual notice is a conclusion of fact, capable of being established by all grades of legitimate evidence.' 2 Pomeroy, Equity Jurisprudence (5th Ed.) 612, § 595. It is Chastain's position that the letter of September 12, 1958, coupled with the monthly reports submitted to him by Champlin, were insufficient as a matter of law to impute knowledge to him that Champlin was allocating mineral substances to him on a basis other than that prescribed in the contract. We think the evidence presents an issue of fact for a jury."

\* \* \* \* \* \*

" \* \* \* Depending upon a jury's estimate of the information set forth in the Champlin letter, it could be concluded that Chastain was under a duty to speak. 'An estoppel may arise as effectually from silence, where it is a duty to speak, as from words spoken.' Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582, 1. c. 587 (1912). Cf. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355 (1947)."

The facts in the case before us do not appear to be as strong as those in the Champlin case, yet in Champlin the elements of the doctrine were submitted to a jury by special issue, and the final disposition of the case by the Supreme Court was to send it back for another trial to a jury. We think the matter here discussed is not conclusive as a matter of law, but that a fact issue is presented for trial by a court or jury.

■ In its most simple form, this case is one of two parties operating under a contract, and one of the parties raising the question that the contract terms are not being followed and asking for a construction of such term or provision; the other party replies that you have gone along with our construction to the point where you are estopped to call for a construction of our agreement—this, because it would be inequitable. At what point is a party equitably estopped to question whether the procedure they are following is in keeping with their agreement? The answer is supplied in Champlin Oil & Refining Co. v. Chastain (supra), 403 S.W.2d at page 401, by the following language:

"An essential element of Champlin's defense that Chastain was equitably estopped is a finding that it relied and was injured by reason of Chastain's silence after he was under a duty to speak. Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929 (1952); Waxahachie National Bank v. Beilharz, 94 Tex. 493, 62 S.W. 743 (1901)."

At the point where Pennzoil protested the procedure and called for a construction of the agreement, had Mobil and the other parties relied on Pennzoil's conduct to their injury? (Element (5) above). Did Mobil and the other defendants go forward with Phase II plans in reliance on Pennzoil's representation that they were in agreement or did they go forward because they considered 100% agreement was not necessary? Their position throughout has been that 100% agreement was not necessary. They knew there was not 100% agreement, yet they went forward. Mobil's letter of June 7 says 96.5% have agreed and Phase II will go into effect on December 1. Much of their briefs before this court is devoted to the argument that 100% agreement is not required, and in their affidavit in support of their motion for summary judgment they set out that they received a 96.5 favorable reply to their telegraphic request for agreement, and that affidavit says, "It was in reliance upon the agreement of the Working Interest Owners that the Unitized Formation was fully developed that prompted the charge to the aforementioned consultants to make their studies for the purpose of determining Phase II Participation." The affidavit then states that the consultants' fee was $58,733.53. In his controverting affidavit Mr. Hover, for Pennzoil, says this was not wasted. We think a fact issue is presented as to the fifth element of the doc-

trine of equitable estoppel, and the same being true of the first element, we deem it unnecessary to discuss the other elements.

 The granting of the defendants' motion for summary judgment cannot be upheld on the basis of the doctrines of ratification or waiver. As indicated earlier, the effect of the judgment is that the right to have the contract construed has been lost. The action for declaratory judgment sought an interpretation or construction of the agreement under which the parties are operating and will continue to operate. We fail to see how approval, or "ratification", of past procedure under the contract can cut off the now existing right to construe, in the absence of the elements of estoppel which have been discussed. Likewise, if we assume that Pennzoil waived its rights in the past, it does not mean that it has waived future rights. Waiver cannot exist until the thing waived is in existence. As said in 60 Tex.Jur.2d 186: "To constitute a waiver, the right or privilege alleged to have been waived must have been in existence at the time of the alleged waiver." (Citing Payne v. Beaumont, Tex.Civ.App., 245 S.W. 94, err. ref., and Roberts v. Griffith, Tex.Civ. App., 207 S.W.2d 443, err. ref., n. r. e.). Also, as said in Snyder v. Citizens State Bank, Tex.Civ.App., 184 S.W.2d 684, affirmed Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471: "While there is a distinction between waiver and ratification, both require full knowledge and intention to waive." The controverting affidavit of Mr. Hover would raise a fact issue here, for he speaks out on "intention", and that affidavit is before us, despite the protests of the defendants that it should not be considered. The trial court overruled defendants' motion to strike it, and such action is not assigned as error.

Being of the opinion that questions of fact are presented by the record before us which preclude the granting of summary judgment, the judgment of the trial court is reversed and the cause remanded for trial on the merits.