John G. HOVE, also known as J. G. Hove,
and Irma M. Hove, Plaintiffs,

v.

Charles S. ATCHISON, Defendant.

Civ. No. 2433.

United States District Court
D. North Dakota,
Northwestern Division.

Feb. 29, 1956.

Arley R. Bjella and Frank F. Jestrab (of Bjella, Jestrab & Neff), Williston, N. D., for plaintiffs.

John C. Gunness and Myron H. Atkinson, Jr. (of Cox, Pearce & Engebretson), Bismarck, N. D., for defendant.

REGISTER, District Judge.

This is an action for cancellation of record of an oil and gas lease covering the lands hereinafter described, and for damages. The action was originally brought in the District Court of Williams County, Fifth Judicial District, State of North Dakota, and was thereafter removed to this Court. Jurisdiction is based upon diversity of citizenship, the defendant being a resident and citizen of the state of Texas, and the plaintiffs, at the time of the commencement of this action, were residents and citizens of the state of North Dakota. The action was tried to the Court without a jury.

As to the decisive facts the parties are substantially in accord. On or about October 19, 1949, plaintiffs, as lessors, executed and delivered to A. M. Fruh, lessee, an oil and gas lease covering the following described real property situated in Williams County, North Dakota:

Township 154 North, Range 96 West of 5th P.M.
Section 17: S ½ NE ¼, S ½ SW ¼, SE ¼
Section 18: SE ¼
Section 19: NE ¼, N ½ SE ¼
Section 20: N ½, N½ SW ¼

and containing 1120 acres. This lease was for a primary term of ten years, and provided for an annual delay rental of 25 cents per acre. The lease was duly filed for record on January 20, 1950, in the office of the Register of Deeds of said Williams County. This lease was subsequently assigned by said lessee to the defendant herein by instrument dated October 31, 1949, and filed and duly recorded on April 17, 1950.

On September 25, 1950, delay rentals were deposited in the Citizens State Bank of Ray, North Dakota (the depositary named in the lease), to the credit of plaintiffs in the amount of $220, covering the subject lease. This amount was retained by plaintiffs, and appropriated by them, and no demand for additional money, or notice of insufficiency of this payment, or objection of any kind was made by them. Mr. Hove first learned of this initial $220 deposit in the spring of 1951.

On September 20, 1951, delay rentals in the amount of $220 were again deposited in said bank by the defendant, covering the said lease. Such rentals were due on October 19, 1951.

The lease involved is what is commonly referred to as an "unless" type lease, rather than a "drill or pay" type lease. It contains the following delay rental provisions:

"If no well be commenced on said land on or before one year from the date hereof, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the Citizens State Bank at Ray, North Dakota, or its successors, which shall continue as the depositary for rental regardless of changes in the owner-ship of said land, the sum of (25) cents Per Acre which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

Also included in the said lease is what is known as a "lesser-interest" or "lesser-estate" clause, which provision is as follows:

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in proportion which his interest bears to the whole and undivided fee. Any interest in the production from the lands herein described to which the interest of lessor may be subject shall be deducted from the royalty herein reserved."

The lease also provides:

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with certified copies of muniments of title deraigning title from lessor; and it is hereby agreed in the event this lease shall be assigned as to a part or parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease insofar as it covers a part or parts of said lands as to which the said lessee or any assignee

thereof shall make due payment of said rental."

The total number of surface acres of the lands covered by this lease is 1120. The Federal Land Bank of St. Paul, Minnesota, owned 50% of the minerals as to the SE ¼ of Section 18, as aforesaid; this reduced the gross acreage by 80 acres, leaving a net acreage of 1040 acres. All parties agree that the acreage should be reduced accordingly, for purpose of payment under the lease.

Also, as shown by the records, Williams County, North Dakota, had previously owned the fee title to the S ½ NE ¼, SE ¼, and S ½ SW ¼ of said Section 17—a total of 320 acres. The statutory law of North Dakota, at the time of the execution and delivery of said lease, as it affects this action provided:

"Reservation of Mineral Rights. Upon the sale of any lands by the county, whether such lands were acquired by tax proceedings, deed, quitclaim deed, or by any other method and whether such lands are transferred by the county by deed, contract, or lease, there shall be reserved to the county transferring each tract of land fifty per cent of all oil, natural gas, or minerals which may be found on or underlying the land. Any transfer, deed, or lease which does not contain such reservation shall be construed as if such reservation were contained therein. * * *" Section 11–2704, NDRC 1943.

At the time of the execution and delivery of the lease here involved, all parties thereto knew of such law, knew of the interest of such county, and mutually understood that Williams County at such time owned 50% of the minerals on or underlying said 320 acre tract. This would, therefore, reduce the mineral acreage by 160 acres, leaving a net mineral acreage of 880 acres. It was on this basis that the payment of $220 was made by defendant at each of the times aforesaid.

On March 21, 1951, the Supreme Court of North Dakota, in the cases of Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132, and Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137, held, in effect, that such reservation by the County was void and wholly ineffective.

On November 4, 1949, the Federal Land Bank of St. Paul executed and delivered an oil and gas lease to A. M. Fruh, lessee, covering its interest in the said SE ¼ of Section 18, which lease was filed for record in the office of said Register of Deeds on January 20, 1950, and duly recorded therein. This same lease was thereafter duly assigned to defendant by instrument dated November 25, 1949, filed for record on April 17, 1950, and duly recorded in the office of said Register of Deeds.

An oil and gas lease dated January 23, 1950, was executed and delivered by said Williams County, as lessor, to A. M. Fruh and Thomas W. Leach, lessees, of its interest in the said 320 acre tract located in said Section 17. This lease was filed for record in the office of said Register of Deeds on February 9, 1950, and was there duly recorded. The said lease was thereafter assigned to the defendant herein by instrument dated February 27, 1950, which instrument was filed for record on April 17, 1950, and duly recorded.

In May, 1951, an action to quiet title to the said 320 acre tract (and other lands) was instituted by the plaintiffs herein. Williams County was one of the defendants in that action, but the defendant herein was not joined as a party defendant therein. Judgment quieting title in the plaintiffs in said action was duly entered on September 29, 1951. A certified copy of said Judgment was filed in the office of said Register of Deeds on September 29, 1951, and was duly recorded therein. No notice of the action to quiet title, or of said judgment, or of the record thereof was served on or furnished to the defendant herein.

In accordance with the practice existing in the depositary bank, a deposit

slip was made as to each delay rental payment and such slip was mailed to the persons whose account was credited therewith. According to the testimony of plaintiff John G. Hove, such deposit slip was received by him within three or four days after the deposit was received by the bank.

Mr. Hove testified that when he received the deposit slip showing the deposit of $220 on September 20, 1951, he took it to his attorney (who had been checking his titles) and told him that he wanted to get a release of the lease now in dispute. On October 11, 1951, plaintiff purchased a cashier's check from the Citizens State Bank of Ray, North Dakota, in the sum of $220 and gave it to his attorney with instructions to return it to the defendant. Mr. Hove testified he demanded a release by instructing his attorney to do so. His attorney thereafter sent a registered letter, dated October 25, 1951, to the defendant, in which a demand for the release was made and in which letter said cashier's check was enclosed. The cashier's check was promptly returned by the defendant, and no release was executed.

Thereafter, payments were made by the defendant to said bank, as delay rentals covering the subject lease, as follows:

On October 10, 1952, in the amount of $340.

On September 29, 1953, in the amount of $260.

On September 13, 1954, in the amount of $260.

On August 11, 1955, in the amount of $260.

All of said deposits were rejected by the plaintiffs and have been held by the depositary bank in a suspense account.

This action was commenced on January 18, 1952.

The delay rental payments of $220 were based upon a net mineral acreage of 880 acres. The total surface acreage included in the lease was 1140 acres;

if, then, from the gross acreage 80 acres be deducted (such 80 acres representing 50% of the minerals as to said SE ¼ of Section 18 owned by the Federal Land Bank of St. Paul, and about which there is no dispute) there remains a net mineral acreage of 1040 acres, which would require payment of $260 in delay rentals. The payment made by the lessee (defendant herein) on October 10, 1952, in effect consisted of a payment of $260 which would become due on the 19th day of said month, and a $40 balance for each of the two preceding years. Subsequent deposits of $260 were based on a net mineral acreage of 1040 acres.

The position of plaintiffs is very clear. They contend that the amount of each of the required payments was $260, that the lease involved is an "unless" type lease which, by its own terms terminates unless the rental is paid, and, that "the only question then is whether or not the rental was paid as it should have been paid". They argue that any reduction made by the lessee under authority of the "lesser interest" provision is his sole responsibility; that if defendant chose to rely upon this "lesser interest" provision he assumed the consequences of the risk thereof; and, that failure to commence drilling operations or to pay the full amount of delay rentals operates as an ipso facto termination of the lease.

Defendant denies that the lease, under the facts of this case, automatically terminated, and, calling attention to the following provision in such lease:

"And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable, as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred."

argues that in effect the plaintiffs are here seeking a forfeiture of a right which the lessee purchased and paid for, and which the defendant acquired by

assignment—a right which the defendant elected to exercise and that to deny him the benefits thereof would constitute a forfeiture.

The respective parties have cited a large number of cases and references in support of their respective contentions. The North Dakota Supreme Court has not had occasion to pass upon this specific question. It does not appear necessary to make a determination of the aforesaid question as to the proper legal interpretation of the lease, in view of the fact that it clearly appears to this Court that the lessors (plaintiffs) were guilty of conduct which gives rise to equitable considerations, and by reason thereof the principles of waiver and equitable estoppel are applicable herein.

When defendant made deposit of the first delay rental payment it was, under the records and the statutory law of the state of North Dakota, correct. There was no mistake, mutual or otherwise, as to its sufficiency. The total gross acreage was 1120 acres; this total was reduced by 80 acres to which the Federal Land Bank of St. Paul concededly had record title; and there was a further reduction of 160 acres, title to which was, under the specific laws of the state of North Dakota, reserved to Williams County. Payment was therefore made on the basis of 880 acres. The amount of payment was correct. Both parties, at the time of such payment, understood the title to be as aforesaid. The payment was deposited pursuant to the lease in ample time. It was accepted, retained and appropriated by the plaintiffs without objection. Plaintiff Hove admitted he knew of such payment, in the spring of 1951. The decisions of the Supreme Court of North Dakota, in the Kershaw and Kopplin cases, supra, were dated March 21, 1951. Apparently shortly thereafter plaintiff knew of such decisions and their effect as to his title, for in May, 1951, he started an action to quiet title to said lands, in which action Williams County was made a party defendant. It will, of course, be presumed that he knew of the provisions of said lease and his rights thereunder. Notwithstanding such knowledge (that is, knowledge both of his rights under the lease and the legal effect of said decisions), he failed to assert any alleged right to terminate such lease because of the alleged insufficiency of the amount of the preceding payment, did not notify the defendant concerning the same, and made no demand for additional payment. Under the facts, plaintiffs will be deemed to have waived their right, if any, to terminate the lease because of the amount of the first delay rental payment.

It is axiomatic that a party to a contract may waive performance of any of its provisions if he so chooses.

A waiver is the voluntary relinquishment of a known right. Sjoberg v. State Auto Ins. Ass'n, 78 N.D. 179, 48 N.W.2d 452. All of the essential elements of a "waiver" exist herein. See also: Buchanan v. Sinclair Oil & Gas Co., 5 Cir., 218 F.2d 436.

As stated, shortly after date of the Kopplin and Kershaw decisions, plaintiffs instituted an action to quiet title to the former tax title lands. Plaintiffs' knowledge of such opinions and of their legal effect must be presumed. One of the defendants was Williams County, North Dakota. At the time said action was initiated, and for months prior thereto, the defendant herein was the record title owner of an oil and gas lease executed and delivered by said County, as lessor, covering the County's pretended interest in such lands. Defendant was not made a party to that quiet title action, was not served with process therein, and was not even notified thereof. When the second delay rental payment of $220 was made by the defendant (and which represented the amount which defendant understood to be correct and which corresponded with the correct amount required at the time of execution of the lease) plaintiff Hove knew that the defendant intended it to be full payment of the required sum. Hove took it to his attorney within a few days after the deposit; that

is, shortly after September 20, 1951, and nearly a month prior to the due date. He instructed his attorney to secure a release of the lease. Thereafter, on September 29, 1951, the judgment in said action to quiet title was entered and on the same day a certified copy thereof was duly recorded. Again no notice of the entry of this judgment or of the recording thereof was given to defendant, notwithstanding the fact that, by virtue thereof, the record title ownership in the lands covered by the lease was changed by affirmative action of the lessors (plaintiffs). The money paid as rental remained in the bank to the credit of the lessors for approximately two more weeks until, on October 11, 1951, and eight days before payment was due, plaintiff Hove purchased a cashier's check in the amount of $220 and delivered it to his attorney. This check was retained by the plaintiffs (in the possession of their attorney) for another two weeks—that is, until October 25, 1951—when it was enclosed in a letter which was sent to the defendant, and in which letter there was contained a demand for a release of the lease. No protest or objection concerning the prior annual payment had been made and defendant had not been advised at any time that there had been any change, by operation of law or by judicial proceeding, in plaintiffs' title position. The acts and omissions of plaintiffs cannot be construed as mere silence. Surely when the judgment quieting title to the lands involved was entered, and copy placed of record, a duty arose to give notice thereof to the defendant, by copy or otherwise, because the latter's rights, of record, were affected thereby. Had a copy, certified or otherwise, of the judgment been seasonably sent to defendant, the effect of such copy would have been to inform him of the change in ownership of record and to notify him of the correct acreage for which plaintiffs would be entitled to payment under their lease. Defendant then would have had ample time within which to make the necessary additional payment. Plaintiffs owed a duty to speak, but they refrained from doing so. Plaintiffs had, as early as the spring of 1951, full knowledge of the true facts and of their rights. By their later actions and failure to give notice thereof to the defendant, it conclusively appears that they had an intent to mislead or at least an intent to deceive the defendant by their silence; defendant was misled by virtue thereof. The defendant was misled to such an extent that he made no change in the amount of the delay rental payment—something which he would certainly not have done but for such silence. Plaintiffs' entire course of conduct leads inevitably to the conclusion that there was a premeditated, deliberate and intentional design or purpose to keep from the defendant knowledge of the true facts until such time as the latter's rights under the lease would have expired or terminated. Plaintiffs in this action are invoking the equity powers of the Court. If the relief asked for be granted, the result would be contrary to equity and justice, and would be unconscionable.

The defendant acted in good faith, had good reason to believe the $220 was sufficient rental payment, and the plaintiffs knew that the defendant believed that the amount was sufficient.

By plaintiffs' acts and omissions they did intentionally and deliberately lead the defendant to believe that the facts concerning the correct acreage remained unchanged from those which existed at the time of the execution of the lease, and such acts and omissions were acted upon by the defendant. Such actions and omissions constituted, in effect, a false representation and concealment of material facts—facts which were known to the plaintiffs and of which the defendant was without knowledge. Such lack of defendant's knowledge was known to the plaintiffs. The acts and omissions of the plaintiffs were made with the intention that they should be acted upon, and defendant did rely thereon and did act to his own prejudice.

"Estoppel by Declaration, Act, or Omission. When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission." Section 31–1106, NDRC 1943. Also see: 31 C.J.S., Estoppel, § 67a (1), p. 254; 31 C.J.S., Estoppel, § 109(b), p. 349; and 15 Words & Phrases, Estoppel, pp. 608–614, incl.

"An essential element of equitable estoppel is a representation which may consist of words, acts or silence, believed and relied upon by the party claiming the benefit of the estoppel which induced him to act *or refrain from acting*, to his prejudice." (Emphasis added.) Werner v. Werner, 74 N.D. 565, 23 N.W.2d 757, quoted with approval in Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137.

"An estoppel may arise as effectually from silence, where it is a duty to speak, as from words spoken. One may be induced to act to his injury on account of the silence of one interested in a transaction, and when such course of action is permitted with the knowledge of the interested party or induced by silence or tacit acquiescence, the doctrine of estoppel may be invoked." Burnett v. Atteberry, 105 Tex. 119, 145 S.W. 582, 587, quoted with approval in Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W. 2d 355, 361.

It appears that the total amount of deposits which have been made by the defendant in the depositary bank is correct. Plaintiffs are entitled to all thereof.

It is the opinion of this Court that the plaintiffs are estopped to assert that the lease involved has been terminated because of the failure to make sufficient payments of delay rentals, and it is the further opinion of this Court that said lease is a valid and subsisting lease on the said premises.

For the foregoing reasons, judgment will be for the defendant. Counsel for the defendant will prepare and submit Findings, Conclusions, Order for Judgment and Judgment in accordance herewith.

It will be so ordered.