John G. HOVE, also known as J. G. Hove,
and Irma M. Hove, Appellants,

v.

Charles S. ATCHISON, Appellee.

No. 15609.

United States Court of Appeals
Eighth Circuit.

Dec. 20, 1956.

Frank F. Jestrab, Williston, N. D.
(Harry M. Pippin and Bjella, Jestrab &
Neff, Williston, N. D., on the brief), for
appellants.

John C. Gunness, Bismarck, N. D.
(Cox, Pearce & Engebretson, Bismarck,
N. D., on the brief), for appellee.

Before GARDNER, Chief Judge, and
VOGEL and VAN OOSTERHOUT, Cir-
cuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiffs, who are lessors in an oil
and gas lease, appeal from final judgment

denying cancellation of the lease and confirming defendant's leasehold interest. The trial court's memorandum opinion is reported in D.C., 138 F.Supp. 486. The principal issue involved in this appeal is whether the trial court was warranted in concluding that plaintiffs were barred by waiver or estoppel from asserting that the lease was terminated. Plaintiffs also contend that the construction to be given an "unless" type lease is involved.

This case was originally commenced in the state court, and removed to the federal district court. Jurisdiction is based upon diversity of citizenship. More than $3,000 is involved. The parties will be designated as they were in the trial court. This case was tried to the court without a jury.

The record discloses that the plaintiffs executed an oil and gas lease upon 1120 acres of land owned by them, which lease was acquired by the defendant by assignment. The lease permitted assignment, and the validity of the assignment is not controverted. The lease is dated October 19, 1949, and runs for a primary term of ten years. It contains the following delay rental provision:

"If no well be commenced on said land on or before one year from the date hereof, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the Citizens State Bank at Ray, North Dakota, or its successors, which shall continue as the depositary for rental regardless of changes in the ownership of said land, the sum of (25) cents Per Acre which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

The lease also contains a lesser-interest clause reading:

"If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in proportion which his interest bears to the whole and undivided fee."

The lease we are considering is of the "unless" type. It now clearly appears that the defendant did not pay the full delay rental due in 1950 and 1951. Plaintiffs contend that the lease automatically terminated upon defendant's failure to pay the full rental due and that no forfeiture is involved. Defendant's contention upon this issue is that the down payment made constitutes consideration, not only for the privileges granted to the date when the first delay rental falls due, but also for the lessee's option to extend the period, and that plaintiffs are in effect seeking a forfeiture. The trial court, after stating that the Supreme Court of North Dakota has not had occasion to pass upon this issue, said, 138 Supp. at page 490:

"* * * It does not appear necessary to make a determination of the aforesaid question as to the proper legal interpretation of the lease, in view of the fact that it clearly appears to this Court that the lessors (plaintiffs) were guilty of conduct which gives rise to equitable considerations, and by reason thereof the principles of waiver and equitable estoppel are applicable herein."

In view of the conclusions we reach upon the equitable issues as hereinafter set out, we, like the trial court, deem it unnecessary and inadvisable to predict how the North Dakota court will construe the termination features of an "unless" lease.

We now proceed to consider the equitable issues. The facts are largely stipulated. There is some oral testimony. There is little if any dispute about the decisive facts. The lease in controversy covers 1120 acres. All parties agree that 160 acres of the leased land were

purchased by the plaintiffs from the Federal Land Bank, that said bank validly reserved 50 per cent of the oil and mineral rights in its conveyance, and that in effect this reduced the gross acreage upon which plaintiffs were entitled to delay rent by 80 acres. The renewal rent on the remaining 1040 acres amounts to $260. It is now established that $260 is the proper amount of annual renewal rent. The defendant has deposited in the designated depository bank renewal payments as follows:

September 25, 1950 ...$220.00
September 20, 1951 ... 220.00
October 13, 1952 ..... 340.00 [1]
October 2, 1953 ...... 260.00
September 17, 1954 ... 260.00
September 15, 1955 ... 260.00

The defendant likewise paid the rental payments due the Federal Land Bank for the years 1950 to 1955, inclusive.

The problem in this case is created by the fact that 320 acres of the leased land is tax title land. One hundred sixty acres were acquired directly by deed from the county, which deed contained a clause as follows: "first party reserves ownership of ——% of all oil, natural gas or minerals which may be found on or underlying said land." The other 160 acre tract was obtained by a deed from a purchaser from the county. No express reservation of mineral rights was made as to this tract. Defendant had a lease with the county of its supposed one-half interest in the oil rights on the 320 acres of tax title land involved in plaintiffs' lease. Defendant punctually paid the rent to the county at all times here material, and in 1950 and 1951 deducted the $40 rent paid the county from the payment made to the plaintiffs. Although it now appears to be definitely established that the county had no oil rights in any of plaintiffs' land, the defendant acted in good faith in making the deduction.

Section 11–2704, NDRC 1943, provides:

"Reservation of Mineral Rights. Upon the sale of any lands by the county, whether such lands were acquired by tax proceedings, deed, quitclaim deed, or by any other method and whether such lands are transferred by the county by deed, contract, or lease, there shall be reserved to the county transferring each tract of land fifty per cent of all oil, natural gas, or minerals which may be found on or underlying the land. Any transfer, deed, or lease which does not contain such reservation shall be construed as if such reservation were contained therein * * *."

Upon its face, this statute appears to reserve to the county one-half of the mineral rights in any land conveyed by the county, including land acquired by tax title.

In Adams County v. Smith, 74 N.D. 621, 23 N.W.2d 873, decided in 1946, the Supreme Court of North Dakota held that section 11–2704 conflicted with later enacted statutes providing for disposition of lands acquired by counties by tax deeds, which later statutes provided that upon sale by the counties of tax titles the deed shall convey all right, title, and interest of the county in such property. There was no express reservation in the county's deed, and the court held that the tax title given by the county is not subject to an implied or constructive mineral reservation. The same result was reached in Kershaw v. Burleigh County, 77 N.D. 932, 47 N.W.2d 132, decided in 1951. In Kopplin v. Burleigh County, 77 N.D. 942, 47 N.W.2d 137, decided March 21, 1951, the Supreme Court of North Dakota went one step further, and held that even if the county in conveying tax title land expressly reserved mineral rights, the attempted mineral reservation was void for the reason that no such reservation was au-

---

[1]. The October 13, 1952, payment of $340 in effect consisted of the payment of $260 delay rental for the year commencing October 19, 1952, and a $40 balance due for each of the two preceding years.

thorized by the statutes permitting the disposition of tax title land.

■ A title certificate obtained by defendant with the lease stated that 50 per cent of the mineral rights on the 320 acres of tax title land was reserved by the county. The certificate was signed by one Michaelson. Plaintiffs admit they discussed the reservation rights of the county with Michaelson. Plaintiffs' testimony shows that at the time the lease was negotiated by Michaelson plaintiffs were under the impression that the county reserved a one-half mineral interest in the land conveyed. Among other things plaintiff John Hove testified:

"I had bought some land prior to this from the County and I knew that the County made some kind of a reservation earlier. I wasn't too familiar with it. I knew they had something there. I bought this on contract and I believe there were different holdings of the reservations on some of that. I figured they were reserving ½. I knew that the County reserved 50% on other lands. * *

"Prior to October 19, 1949, I had purchased some other land from the County. It was during the '40's and it was in a different township. I knew that there was something to the effect that the County purported to reserve 50% of the minerals. * * * At that time I knew that I had bought land from the County, yes. I knew the County purported to reserve 50% of the minerals. I didn't know just what the claim would be. I guess I didn't go into that very far."

The trial court states, 138 F.Supp. at page 491:

"The defendant acted in good faith, had good reason to believe the $220 was sufficient rental payment, and the plaintiffs knew that the defendant believed that the amount was sufficient."

This conclusion of the trial court is fully substantiated by the evidence.

Plaintiffs themselves at the time the lease was negotiated were of the belief that the county retained one-half of the mineral rights in the lands acquired by tax title. It would appear that this impression of plaintiffs remained until the spring of 1951 when plaintiffs consulted their attorney. The 1950 rental in the amount of $220 was deposited on September 25, 1950. Plaintiffs testified that the bank usually mailed deposit slips three or four days after the deposit. In any event, it clearly appears that plaintiffs knew of this deposit not later than the spring of 1951. No objection as to the adequacy of the 1950 deposit was made. The deposit was never returned.

It is perhaps of some significance that the plaintiffs in 1951 learned oil leases were worth far more money than the amount called for in the involved lease, and that plaintiffs were interested in discovering a way to terminate the existing lease between the parties to this action. The acceptance of the 1950 rent without protest would naturally lead defendant to believe that he had paid the proper amount. It is obvious that defendant intended to pay the full delay rental, and the plaintiffs fully realized that such was defendant's intention.

Delay rent due October 19, 1951, in the amount of $220 was received by the depository bank on September 20, 1951. Plaintiffs learned of this payment a few days thereafter. Sometime prior to October 11, 1951, plaintiffs consulted with their attorney who advised them that the payment made did not meet the conditions of the lease. On October 11, 1951, plaintiffs obtained a certified check for $220 to be used to repay the 1951 deposit. They placed such check in the hands of their attorney. The attorney then waited until October 25, six days after the rental due date and more than a month after the date plaintiffs had received the deposit, to send the check to the defendant with the advice that the lease was terminated because of inadequate payment of rental.

Shortly after the 1951 decisions by the Supreme Court of North Dakota in the

Kershaw and Kopplin cases, above referred to, plaintiffs commenced an action to quiet title to the tax title land involved in the lease. All that appears in the record is the decree in that case dated September 29, 1951. Defendant was not made a party to the quiet title action, nor did he have any notice thereof before the 1951 rent fell due. The county and various persons were made defendants in the quiet title action. The parties in their briefs in this case make various attempts to explain the reasons for the quiet title action. It does not appear from the record before us what defects in the title the quiet title action was intended to cure. However, as above stated, the county was made a party defendant, and one result of the decree was to cut off all interest of the county in the land, including the mineral rights.

■ The trial court found that under the circumstances of the present case plaintiffs were under a duty to speak, and advise defendant that the delay rental payment was inadequate. The evidence fully warrants this conclusion.

■ Plaintiffs rely largely upon Selle v. Stanolind Oil Company, an unreported court decision of the District Court of Divide County, North Dakota. We do not believe that either the federal district court or this court is bound as to North Dakota law by an isolated trial court decision. See King v. Order of United Commercial Travelers of America, 333 U.S. 153, 68 S.Ct. 488, 92 L.Ed. 608; Sunbeam Corp. v. Civil Service Employees' Cooperative Ass'n, 3 Cir., 187 F.2d 768, 771. The only authority cited in the Selle case for the proposition that there is no duty on the part of one receiving inadequate delay rent to speak is Empire Gas & Fuel Co. v. Saunders, 5 Cir., 22 F.2d 733, upon which case plaintiffs also rely. The Empire Gas case involved a Texas lease, and the holding of the Empire Gas case has been repudiated both by the Texas court and by the Court of Appeals for the Fifth Circuit. Standard Oil Company of Texas v. Clark, D.C.E.D.Tex., 133 F.Supp. 346, affirmed sub nom. Woolley v. Standard Oil Company of Texas, 5 Cir., 230 F.2d 97; Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355. In the Harrison case the lessee, through a misinterpretation of an assignment, paid lessors' partial assignee an inadequate rent. The court, though recognizing that under Texas law an "unless" lease is terminated when delay rental is not paid in full by the due date, held lessors' assignee estopped from asserting the lease was terminated because of inadequate rent payment, stating, 205 S.W.2d at page 361:

"* * * Where, as in this case, the lessee has in good faith made a mistaken construction of the lessors' partial conveyance of their interests and lessee has made a payment in accordance with such construction, of which the assignee has notice, the duty rests on the assignee to notify the lessee of its mistake so that the lessee will have an opportunity to make a proper payment of the delay rentals. Where the assignee, instead of giving the lessee such notice, remains silent, we hold that the assignee is estopped to assert that the lease has terminated as to his interest on the ground that the lessee has failed to pay to him a sufficiently large share of the delay rentals.

"While we do not know of any case presenting the exact situation involved here, we think the general principles of equitable estoppel are applicable. * * *"

In Woolley v. Standard Oil Company of Texas, supra, the proper total delay rental was paid, but the depository by mistake was directed to make an improper distribution. The assignee who received an inadequate share of the rental asserted the lease was terminated as to him. The trial court had held the assignee was estopped to assert termination. While the court of appeals found the case could be affirmed on other grounds, it clearly indicated the case could also be affirmed upon the estoppel issue.

In Buchanan v. Sinclair Oil & Gas Co., 5 Cir., 218 F.2d 436, because of an error in determining acreage, rent was not paid on approximately four acres. The lessor accepted the rent payment without objection. The court held that this estopped him from asserting that the lease terminated because of underpayment.

In Jones v. Southern Natural Gas Company, 213 La. 1051, 36 So.2d 34, 38, the gas company received an assignment of an oil lease covering 7½ quarter-quarter sections, which under normal circumstances would total 300 acres. The gas company promptly paid delay rentals on 300 acres, believing that in good faith to be the correct acreage. The lessor demanded termination upon the basis that full delay rentals had not been paid, contending that the leased tract actually contained some 322 acres. Various surveyors at the trial testified that the acreage overran 300 acres from ½ to 22 acres. The court held that equitable circumstances prevented the termination of the lease stating:

"The defendant in this case is not pleading that the plaintiff became estopped from demanding the alleged shortage, but is pleading that she is estopped from demanding the forfeiture, without having informed the defendant of the shortage and without having given the defendant an opportunity to correct the mistake. * * * There is ample authority for the proposition that considerations of equity may prevent a forfeiture of a mineral lease where the failure of the lessee to pay the full amount of the delay rentals, or his failure to pay it within the time stipulated, is the result of a mistake on his part, and where the circumstances are such that the mistake is a pardonable one, and particularly where the mistake is a mutual mistake on the part of both the lessor and the lessee. In such cases equity requires that when the lessor learns of the mistake he should promptly inform the lessee of the mistake and give the latter an opportunity to correct it immediately, before he, the lessor, can demand forfeiture for nonpayment of the rental within the time stipulated."

In Kugel v. Young, 132 Colo. 529, 291 P.2d 695, 703, the court found the lease to be of the "unless" type and held that such leases automatically terminate if there has been no drilling and the delay rental has not been paid in full on time. The court discusses quite fully the principle applicable to "unless" leases and indicates that it feels such leases should be strictly construed. The court in the course of its opinion states:

"We are aware of no instance where the lessor kept the money and later by offering to return it succeeded in having the lease declared judicially cancelled.

" * * * Nevertheless, in practically all jurisdictions where development of petroleum resources breed litigation, we find that in exceptional situations the courts have found ways to grant relief by resort to some rule of equity in what may seem to them as hardship cases."

See also Note, 5 A.L.R.2d 993.

Section 31–1106, NDRC 1943, provides:

"Estoppel by Declaration, Act, or Omission. When a party, by his own declaration, act, or omission, intentionally and deliberately has led another to believe a particular thing true and to act upon such belief, he shall not be permitted to falsify it in any litigation arising out of such declaration, act, or omission."

The trial court states in its opinion in the present case that the plaintiffs are estopped to assert that the involved lease has been terminated because of failure to make adequate delay rental payments. We are satisfied that the trial court in its opinion has demonstrated the correctness of this conclusion.

The judgment appealed from is supported by substantial evidence and was not induced by any erroneous view of the law.

The judgment is affirmed.