FOURNET, Chief Justice.
The Atlantic Refining Company, as assignee of a mineral lease executed by L. C. Furlow, dated January 30, 1943, instituted this suit to have a certain lease subsequently executed by Furlow in favor of S. Gordon Reese, dated April 4, 1946, declared null, and to have the validity of its lease recognized. In addition to Furlow and Reese as defendants to this proceeding, the Shell Oil Company, Inc., which had acquired a one-half interest in the mineral rights from Furlow by deed dated May 14, 1943, was also made a party defendant. From a judgment in favor of the plaintiff, as prayed for, all the defendants appealed; Furlow, however, has since voluntarily dismissed his appeal without prejudice to the rights of his co-defendants.
The facts of the case are not in dispute. On January 30, 1943, Furlow, the owner of certain property situated in Caldwell Parish and described as the Southwest Quarter of the Southeast Quarter of Section 25, the Northeast Quarter of the Northeast Quarter of Section 36, Township 15 North, Range 2 East, and the Northwest Quarter of the Northwest Quarter of Section 31, Township 15 North, Range 3 East, comprising about 120 acres, executed a mineral lease thereon to G. G. Nesbitt, Jr., the consideration being $120 cash and a %th royalty on the oil and gas produced, and the lease providing that if operations for drilling were not commenced within one year from date the lease was to be terminated unless on or before such anniversary date the lessee paid or tendered to the lessor or to the credit of lessor in the Ouachita National Bank at Monroe, Louisiana, the sum of $120, which was to cover the privilege of deferring commencement of drilling operations for a period of 12 months, successively, during the primary term of 10 years. The lease also specified that the rights of either party might be assigned but that a change in ownership was not to be binding on lessee or impair the effectiveness of any payments made until the lessee “shall have been *585 furnished, forty-five days before payment is due, a certified copy of recorded instrument evidencing any transfer,” sale or other change in ownership (Par. 8 of contract). On February 11, 1943,_ the lessee assigned the lease to plaintiff and on the following day it was filed for record in the Conveyance Records of Caldwell Parish.
On the 14th day of-May, 1943, Furlow conveyed to defendant Shell Oil Company, Inc., a one-half interest to the minerals in and under the above-described property. There was agreement between the parties however that Shell was. not to participate in the rentals, and to evidence that intention certain words and provisions of the printed form to the contrary were stricken out on the typewriter and the instrument was initialed by the vendor in the margin opposite these deletions, so that the printed form appeared thus: “ * * * Conveys unto Grantee One Half (%) of all of the royalties, -rentals and other benefits, «eluding money rentals payable íer drilling operations, accruing under any valid oil, gas or mineral lease or servitude on said property which has heretofore been filed for record * * While this instrument transferring a half interest in the minerals to the Shell Company was duly recorded in the Conveyance Records of Caldwell Parish on June 7, 1943, neither the plaintiff nor its assignor Nesbitt was ever served with a certified copy thereof.
The delay rentals for the years 1944 and 1945 were deposited to Furlow’s credit with the depositary named in the contract of lease, the Ouachita National Bank. It appears, however, that on December 21, 1945, some 40 days before the anniversary date, the plaintiff, instead of depositing the entire amount of the delay rentals for the ensuing year to Furlow’s account, deposited in the Ouachita National Bank the $120 with instructions that $60 thereof was to be credited to Furlow’s account and $60 to the account of the Shell Company. This action was taken by plaintiff pursuant to a title opinion by its attorneys, dated March 12, 1945, and based on an examination of an abstract procured by plaintiff and prepared by the Clerk of Court of Caldwell Parish. The abstract contains a correct copy of the mineral conveyance to Shell as it is recorded, without showing the deletions or making reference thereto.
On February 13, 1946, the Cashier of the depositary bank addressed a letter to the plaintiff advising that Furlow had refused to accept the deposit of $60, claiming that he was entitled to the whole amount of $120. On February 18 plaintiff answered this letter, suggesting that possibly Furlow had overlooked the transfer made to Shell, and stating that accordingly a copy of the letter addressed to the Bank was being forwarded to plaintiff’s Shreveport office with a view that someone from there would contact Furlow. Three days later, on Feb *587 ruary 21, after an examination of the original document filed in the Clerk’s office, the plaintiff wrote to Shell and advised that upon examination of the original record they discovered the deletion of the word and phrase, which did not appear in the abstract upon which its attorney’s opinion had been based, and observed: "It would appear, however, that all rental payments should have gone to Mr. L. C. Furlow.” (Emphasis ours.) This was followed with the paragraph: “If you agree with the above interpretation, we would appreciate your executing the instrument attached hereto and return with your check in the amount of $60.00 made payable to Mr. L. C. Furlow, which will straighten the matter out.” The enclosed document was an instrument reciting the acquisition by Shell, the prior execution of the lease by Furlow to Nesbitt and its assignment to plaintiff, an acknowledgment that despite the terms of the mineral deed it was the intention of Furlow and Shell that the entire delay rental should be paid to Furlow— as well as an acknowledgment that payment of the 1946 rental in amounts one-half to Furlow and one-half to Shell was in accordance with the provisions of the lease, but stating further that in accordance with the intentions of the parties relative to the disposition of delay rental payments in the said mineral deed, Furlow acknowledged receipt of $60 from Shell; and plaintiff was instructed therein to make its future delay rental payments accordingly. Shell Oil Company replied, advising receipt of the letter and the instrument, stating that this was the first notice they had had of the rental payment to which they were not entitled, and while they had not actually received payment they understood that the amount was on deposit to their credit in the Ouachita National Bank; and enclosed their check in amount of $60, payable to plaintiff. Plaintiff answered this letter on March 28, stating that it had been advised that Furlow “takes the position under the instrument in question that it was his intention that he should receive the entire delay rental payment instead of one-half of it,” to which Shell had agreed; but insisted that the rental payment was nevertheless entirely proper and that plaintiff’s lease was in full force and effect, since it was not bound by the intention of the parties not disclosed by the Conveyance records. Plaintiff returned the Shell check for $60 payable to it, but never paid nor tendered the amount to Furlow.
On April 4, 1946 (more than two months after the time limit set in the contract of lease for the payment of the rentals in order to keep the lease in effect during the ensuing year), Furlow addressed a letter to the Bank advising them not to accept or deposit to his credit any delay rentals from the plaintiff, and on the same date executed a lease affecting the same acreage, in favor of Reese.
Plaintiff contends, in which it is supported by the opinion of the trial judge, *589 that it was entitled to rely on the Conveyance records; that contracts must be construed with reference to the words which they contain, and, in construing the same, words which have been erased are not to be considered, citing Corpus Juris, Vol. 13 Contracts, Sec. 505, p. 539; 17 C.J.S., Contracts, § 317; and consequently that the mineral deed should be construed without consideration of the deleted words, and, so construed, that it conveyed one-half of the delay rentals to the Shell Oil Company; that therefore the payments made by plaintiff maintained its lease in force and the subsequent lease from Furlow to Reese was null.
The fallacy of this conclusion lies, we think, in the fact that the-plaintiff had no occasion to rely on the public records or to construe the contract, as no certified copy of the recorded deed evidencing the transfer of mineral interest from Furlow to Shell was delivered to plaintiff and it was not required to interpret the intention of the parties or to act in reference thereto; and as no demand for payment had been made on plaintiff by Shell; nor had pressure been brought to bear by anyone which would have caused plaintiff to turn to the public record in determining a course of action. In fact, there was no occasion for delivery of a certified copy of the recorded deed in view of the agreement between Furlow and Shell that the delay rental was to be received in its entirety by Furlow. Plaintiff paid the whole delay rental to Furlow for the years 1944 and 1945, and although it received from its attorney a “Final Opinion on Title” on March 12, 1945 (more than ten months before the succeeding delay rental payment became due on January 30, 1946), without further inquiry, either to Furlow or to Shell, proceeded to make the rental payment on December 21, 1945 (some 40 days before the due date) by depositing the amount in the named depositary, Ouachita National Bank, half to the credit of Furlow and half to the credit of Shell. After the fact of Fur-low’s position was made known to plaintiff by the Bank’s letter of February 13, 1946, and again without inquiry, instead of trying to straighten the matter out with Fur-low the plaintiff sought to coerce Shell into transferring the $60 to Furlow and into signing an instrument supposedly designed to clarify the rights between Furlow and Shell; and up to this date plaintiff has not tendered this $60 to Furlow. That plaintiff does not feel secure in the course it has followed is obviously exposed in the course it took when, in its attempt to comply with the payment of delay rentals for the year 1947, plaintiff deposited in the named depositary bank $120 to the credit of Furlow and tendered its check for $60 to Shell. However, both payments were refused.
It is to be observed that in the title opinion upon which plaintiff bases its good faith in making the 1946 payment as it did, plaintiff was advised that inasmuch as *591 it had not been served with a certified copy of the conveyance from Furlow to the Shell Company at least 45 days before payment was due, as required under section 8 of the contract of lease, the first and second rental payments could properly have been made in their entirety to Furlow and “subsequent rental payments may be made in their entirety, at the election of the Atlantic [plaintiff], to L. C. Furlow until a certified copy of this mineral conveyance is served upon the Atlantic, or the Atlantic may divide the rental payment, even if it has not received a certified copy of this deed, and pay % to Furlow and % to the Shell Oil Company, Incorporated.” (Emphasis ours.) Thus it may be seen that the plaintiff was not acting on the record— for, after relying on the title opinion and after this controversy arose, an examination of the original document disclosed the fact of the deletions and was sufficient to warrant the conclusion on the part of plaintiff that “it would appear that all rental payments should have gone to Mr. L. C. Furlow” — but acted at its own peril in choosing an insecure method without further inquiry, when it was protected by its own contract; and furthermore, made no effort to straighten out its difficulties with Furlow, the real party in interest.
Clearly, according to the facts of this case, the authorities relied on by the plaintiff, Jones v. Southern Natural Gas Company, 213 La. 1051, 36 So.2d 34; Gloyd v. Midwest Refining Co., 10 Cir., 62 F.2d 483; and Humble Oil & Refining Co. et al. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, are neither pertinent nor controlling.
The holding in Jones v. Southern Natural Gas Co., supra, cannot avail plaintiff under the facts of this case since by its actions plaintiff has removed itself from the equitable doctrine there announced. In that case the mineral lease, which covered 518 acres more or less at an annual delay rental charge of $518, provided that in the event of assignment in whole or in part of the rights of either party, the rental payments were to be apportioned as between the several leasehold owners ratably according to surface area of each. The defendant became assignee of a portion of this lease and on the due date for rental payment in 1944 deposited $300 to the credit of plaintiff in the named depositary, which amount was arrived at by defendant’s calculation that the portion of surface area covered by its assignment comprised 300 acres (on the assumption that a section contained the regulation 640 acres). No complaint of shortage in payment was made by plaintiff. Again on the due date in 1945 the amount of $300 was deposited with the bank for plaintiff’s credit, but shortly thereafter plaintiff sought to declare the lease at an end for failure to comply with its terms, and to obtain a release from defendant. The latter immediately sought to have plaintiff’s claim clarified, much correspondence passed between them, and a check was mailed to *593 plaintiff to cover the additional rent for two years on the basis of plaintiff’s claim that the defendant’s assignment actually covered 322 acres. The facts presented a mutual mistake, since the plaintiff herself did not know that the amount paid by the defendant was insufficient, but only knew she had not received a total of $518. Having accepted the first payment as being sufficient she was estopped to demand a forfeiture. We said: “In such cases equity requires that when the lessor learns of the mistake he should promptly inform the lessee of the mistake and give the latter an opportunity to correct it immediately, before he, the lessor, can demand a forfeiture for nonpayment of the rental within the time stipulated.” [213 La. 1051, 36 So.2d 38.]
The case of Gloyd v. Midwest Refining Co., supra, has no application here as it involved a rental check lost in the mail, and although a duplicate was promptly sent upon advice by the lessor of non-receipt of payment, the same was refused; whereupon the court granted lessee relief from the forfeiture of the “unless” oil lease because .lessee’s failure to pay in time was due to an accident.
In Humble Oil & Refining Co. v. Harrison, supra, the third case relied on by plaintiff, the court had for consideration an ambiguous mineral deed. A certified copy of this mineral deed, transferring a fractional portion of the mineral interest in the land, was sent to Humble Oil Company, and it was necessary for Humble to construe the deed in order to determine the correct delay rental to be paid to persons holding fractional mineral interests. Humble improperly construed the contract as to the interest payable to Harrison and made delay payments accordingly which were too small, but these were received for a period without protest; then Harrison refused to accept further payments, contending that the lease was null as to his interest. The Court (Supreme Court of Texas) said: “In the present case, Humble’s failure to pay to Harrison his full share of the rentals originally payable to the Ottos is due primarily to a misconstruction of an ambiguous mineral deed to which Humble was not a party, and, secondarily, to a failure on the part of Harrison, after he knew that Humble had misconstrued the deed, to notify Humble of the proper construction” [146 Tex. 216, 205 S.W.2d 361], and held that Harrison was estopped to assert that Humble’s lease had been terminated because of failure to make sufficient payments of delay rentals. The distinction between that case and the one at bar lies in the fact that Humble was required to construe the contract between the parties in order to determine the amount due each; and, besides, the lessor had accepted the payments tendered for a period without protest. The Court’s holding as to estoppel is not here pertinent since Furlow did notify the plaintiff, without undue delay, of the insufficiency of the deposit before refusing to accept the *595 deposit of $60, and thereafter plaintiff never sought to rectify the error.
We therefore conclude that under the very terms of the contract between the plaintiff and Furlow, no drilling operations having taken place within the first twelve months or within the extended periods for the years 1944 and 1945, and plaintiff having failed to pay the required amount for the year 1946, the lease was terminated by its own terms. 2 Summers Oil & Gas, Perm.Ed., § 452, p. 497. See, also, Le Rosen v. North Central Texas Oil Co., 169 La. 973, 126 So. 442.
For the reasons assigned the judgment of the lower court is annulled and set aside, and it is now ordered, adjudged and decreed that there be judgment in favor -of the defendants dismissing plaintiff’s suit at its cost.
HAMITER, J., dissents.
HAWTHORNE and McCALEB, JJ., dissent and assign written reasons.