HOOD, Judge.
This action was instituted by Herbert Richard to cancel an oil, gas and mineral lease on the ground that the lessees had not drilled or paid an annual delay rental within the time specified in the lease. The suit was instituted originally against a number of parties, but it was settled as to some of them, leaving five defendants remaining. One of the remaining defendants is Tarpon Oil Company, the owner of an interest in the lease. A third party demand filed by one of the other remaining defendants was severed from the principal suit by agreement of the parties, and it is not before us now.
Judgment was rendered by the trial court in favor of defendants, dismissing plaintiff’s suit at his costs. Plaintiff has appealed.
The issues presented are whether the delay rental due under the lease on March 11, 1970, was timely paid, and if not, whether plaintiff is estopped from demanding or having the lease cancelled on that ground.
On March 11, 1969, Herbert Richard executed an oil, gas and mineral lease on a standard form, leasing his 37.146 acre tract of land in St. Landry Parish to Frank J. Dietlein, Jr. The primary term of the lease was three years, and the contract contained the following provision:
“This lease shall terminate on March 11, 1970, unless on or before said date the Lessee either (1) commences operations for the drilling of a well on the land, or on acreage pooled therewith, in search of oil, gas or other minerals and thereafter continues such operations and drilling to completion or abandonment; or (2) pays to the Lessor a rental of Twenty Five and no/100 Dollars ($25.-00) per acre for all or that part of the land which Lessee elects to continue to hold hereunder, which payment shall maintain Lessee’s right in effect as to such land without drilling operations for one year from the date last above mentioned ; and Lessee may continue to maintain the rights granted without drilling operations for successive twelve months’ periods (during the primary term) by paying Lessor, on or before the beginning of such respective periods Twenty Five and no/100 Dollars ($25.-00) per acre for all or that part of the land held hereunder. Payments may be *263 made to the Lessor or may be mailed or delivered for deposit to Lessor’s credit in the Planters Trust & Savings Bank of Opelousas, Louisiana, which bank or its successors shall continue to he the depository for such rentals as the representative of Lessor and Lessor’s successors and assigns; . . . ”
The lease thereafter was assigned to other parties, and it is now owned in indivi-sión by several assignees, one of which is Tarpon Oil Company. No drilling operations were commenced on the leased property before March 11, 1970.
On February 18, 1970, about three weeks before the first annual delay rental became due on the lease, Tarpon Oil Company forwarded to Planters Trust & Savings Bank of Opelousas a check for the sum of $928.-65, representing payment of the delay rental due under this lease on March 11, 1970. The check was made payable to the order of “Planters Trust and Savings Bank, for Hebert Richard, Opelousas, Louisiana.” The check was for the correct amount of the delay rental due under this lease, it was made payable to the proper lessor, and it was timely mailed.
Accompanying the above mentioned check was a forwarding letter from Tarpon Oil Company to the bank, together with a form of a receipt. The forwarding letter recites that it was issued in payment of the annual delay rental due on March 11, 1970, according to the terms of the lease. The letter correctly identified the lease by showing the date of the contract, the names of the lessor and lessee, the general location of the property affectéd, and the original act number as shown in the records of St. Landry Parish. The letter, however, incorrectly referred to the property as containing 3.125 acres, and it incorrectly instructed the bank to deposit the check for:
"Herbert Richard appearing herein in his ca-Route 1, Box 278 pacity as duly qualified Opelousas, Louisiana Curator of the Interdict, Adolph Richard, Jr."
The check and the forwarding letter were received by the bank on February 20, and on that date the bank deposited the check to the account of “Herbert Richard for Adolph Richard, Jr.”
The record shows that plaintiff maintained two separate checking accounts in the Planters Trust & Savings Bank. He maintained his own individual account in the name of “Herbert Richard,” and he maintained another account in the name of Herbert Richard, as curator for the interdict, Adolph Richard, Jr. The bank listed the last mentioned account as “Herbert Richard for Adolph Richard, Jr.”
Plaintiff was the duly appointed curator of the interdict, Adolph Richard, Jr., at the time these transactions took place. The interdict apparently owned a 3.125 acre tract of land, lying near or adjacent to the property which was affected by the above described lease. On May 5, 1969, an oil, gas and mineral lease was executed by “Herbert Richard, appearing herein in his capacity as duly qualified curator of the interdict, Adolph Richard, Jr.,” leasing the above mentioned 3.125 acre tract of land to Frank J. Dietlein, Jr. That lease was for a term of five years, but the consideration due the lessor for the entire five year period was paid, so no delay rentals were due under that lease. The lease of the interdict’s property was also assigned to other parties, and Tarpon Oil Company owns an interest in that lease, as it does in the lease executed by plaintiff individually.
It is apparent that some one in the office of Tarpon Oil Company had become confused about these two leases at the time the above mentioned letter of transmittal was written to the bank in Opelousas. The check which was sent in payment of the delay rental owed under the lease affecting plaintiff’s property was correct in every detail and it was timely mailed. The letter of transmittal correctly identified the lease for which the payment was intended, but in that letter Tarpon incorrectly direct *264 ed the bank to deposit the check to the account of Herbert Richard, as curator, rather than to his individual account.
Herbert Richard received a statement from the bank during the latter part of the month of February, and he noticed then that the check had been deposited to his account, as curator, rather than to his individual account. He knew that the check had been issued in payment of the delay rental due under the lease affecting his property, and that no delay rentals were due under the lease which he had executed in behalf of the interdict. He promptly contacted the cashier of the Planters Bank and requested that the amount of the payment be transferred to his personal account. The cashier refused to make that transfer, and he refused to contact Tarpon Oil Company to inquire if it would authorize such a shift of funds. Plaintiff proposed that he write a check on his account, as curator, and deposit the check in his personal account, but the cashier cautioned against doing that. Plaintiff then informed the bank official that he would consult his own attorney for the purpose of getting the payment transferred from the curator account to his own individual account.
Plaintiff did not contact his attorney until about March 19, which was after the date on which the delay rental was due. He then apparently elected to demand that the lease be cancelled rather than to have the amount of the rental payment transferred from the curator account to his personal account. Immediately after Tarpon Oil Company was notified of the fact that the deposit had been made to the wrong account, it contacted the bank and the funds were transferred to Herbert Richard’s personal account. Plaintiff then, through his attorney, wrote to the bank requesting that the money be returned to Tarpon Oil Company. Shortly thereafter this suit was filed. We have already noted that the trial court rendered judgment rejecting plaintiff’s demands.
Plaintiff contends that the lessees have defaulted in the payment of the delay rental due on March 11, 1970, since the payment of that rental was not deposited in the personal account of Herbert Richard prior to that date. He takes the position that the failure to make the payment timely ipso facto terminated the lease.
The provision of the lease which we quoted earlier in this opinion is frequently referred to as the “unless” clause of a lease. And, a lease which contains such a clause is often called an “unless lease.” Where an oil, gas and mineral lease contains such a provision, the intentional failure of the lessee to drill or to pay the delay rental on or before the date specified in the contract ipso facto terminates the lease, and notice of an intent to cancel the lease is unnecessary. Jones v. Southern Natural Gas Company, 213 La. 1051, 36 So.2d 34 (1948). See also XXIII Tul.L.Rev. 418-420.
Plaintiff relies on the quoted provision of the lease and on LeRosen v. North Central Texas Oil Company, 169 La. 973, 126 So. 442 (1930). In LeRosen an oil and gas lease was executed by plaintiff, a married man, affecting property belonging to the community. The lessee did not drill and it deposited the delay rental to the joint credit of plaintiff and his wife. Our Supreme Court held that the lessee had failed to pay the delay rental as provided in the lease, because “the money deposited was not subject to the unconditional control and order of the lessor.” The court also held that there was no legal duty resting upon plaintiff to advise defendant that it had failed to comply with the condition.
The harsh rule applied in LeRosen was later rejected by the Supreme Court in Jones v. Southern Natural Gas Company, supra. In Jones, the payments made by the lessee as delay rentals for two years were insufficient. The Supreme Court refused to cancel the lease on equitable grounds, however, holding that the lessor should have informed the lessee of the *265 mistake and given the latter an opportunity to correct it before demanding a cancellation of the lease. The court said:
“There is ample authority for the proposition that considerations of equity may prevent a forfeiture of a mineral lease where the failure of the lessee to pay the full amount of the delay rentals, or his failure to pay it within the time stipulated, is the result of a mistake on his part, and where the circumstances are such that the mistake is a pardonable one, and particularly where the mistake is a mutual mistake on the part of both the lessor and the lessee. In such cases equity requires that when the lessor learns of the mistake he should promptly inform the lessee of the mistake and give the latter an opportunity to correct it immediately, before he, the lessor, can demand a forfeiture for nonpayment of the rental within the time stipulated.”
In the Jones case, the Supreme Court noted that its decision there was not consistent with some of the pronouncements made in LeRosen v. North Central Texas Oil Company, supra, and it added: “So far as the two decisions are inconsistent the former (LeRosen) henceforth must be considered overruled.”
The rule announced in Jones was also applied in Calhoun v. Gulf Refining Company, 235 La. 494, 104 So.2d 547 (1958), where the incorrect amount was paid by the lessee. The court said:
“Had Mrs. Calhoun taken such action when the deposit was made, defendants might have immediately taken steps toward development or have made separate payment of the amount to maintain the lease to the extent of the one-quarter mineral interest it had always covered. Because of her silence and inaction, Mrs. Calhoun is now estopped to say that the sum was too large and therefore not a proper payment of delay rental.”
The same rule was applied in Davis v. Laster, 242 La. 735, 138 So.2d 558 (1962), where the Jones case was cited and applied. The pertinent part of the decision is summarized in a syllabus, which reads:
“Considerations of equity may prevent forfeiture of mineral lease where failure of lessee to pay full amount of delay rentals or to pay within time stipulated is result of a pardonable mistake on his part, particularly where mistake is a mutual one on the part of both lessor and lessee.”
In two other cases, Rushing v. Griffin, 240 La. 31, 121 So.2d 229 (1960), and Atlantic Refining Company v. Shell Oil Company, 217 La. 576, 46 So.2d 907 (1950), mineral leases were held to have expired because of the lessee’s failure to make proper payment of delay rentals prior to the due dates. In each of those cases, however, the Supreme Court found that the lessor had adequately discharged his obligation to inform the lessee of his mistake.
Plaintiff contends that in Johnson v. Smallenberger, 237 La. 11, 110 So.2d 119 (1959), the Supreme Court restricted the application of the Jones case to the factual situation which existed there. We do not agree. In Johnson the delay rental was not paid at all, while in all of the other cases where equitable estoppel was used, the lessee had in good faith attempted to make the payment which was due. We do not construe the Johnson case as rejecting or restricting the rule which was applied in Jones.
In the instant suit, plaintiff knew that the lessee had made an honest mistake in attempting to make payment of the delay rental, and he could have informed the lessee of the error. Had he done so, Tarpon would have been able to correct the mistake easily. Instead of notifying the lessee, however, plaintiff waited until the anniversary date had passed, and he then demanded a cancellation of the lease.
Our conclusion, based on the cited jurisprudence, is that whefi Richard be *266 came aware of Tarpon Oil Company’s mistake, he was under a duty to adequately inform the lessee of the mistake without undue delay. His failure to do so effectively estops him from pleading nonpayment of the delay rental as grounds for forfeiting the lease.
For these reasons the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.