Alice Shilling LAPEZE,
Plaintiff–Appellant,

and

Hiram Shilling, Intervenor–Appellant,

v.

AMOCO PRODUCTION CO.,
Defendant–Appellee.

No. 87–3206.

United States Court of Appeals,
Fifth Circuit.

April 15, 1988.

Davis B. Allgood, Gary, Field, Landry & Dornier, Baton Rouge, La., for plaintiff-appellant.

Leonard L. Kilgore, III, Kean, Miller, Hawthorne, Darmond, McCowan & Jarman, Baton Rouge, La., for defendant-appellee.

Before CLARK, Chief Judge, REAVLEY, Circuit Judge, and HUNTER,* District Judge.

EDWIN F. HUNTER, Jr., District Judge.

Alice Shilling Lapeze and Hiram Shilling appeal the district court's dismissal of their suit to cancel a mineral lease held by Amoco Production Company, 655 F.Supp. 1 (1987). We affirm.

The basis of the plaintiffs' claim is essentially set forth in Paragraph 20 of the petition, as follows:

"Because shut-in royalties and/or delay rentals were not paid to the petitioners in accordance with the terms of the Lease, the Lease was terminated."

* District Judge of the Western District of Louisiana, sitting by designation.

The objective facts are not in dispute. On March 3, 1976, appellants' father, Eugene Shilling executed a mineral lease in favor of Amoco. The lease provided that rental payments were to be made to the "Lessor" "Eugene Shilling" or deposited to the lessor's credit in the Livingston State Bank. Eugene Shilling died on June 18, 1979.

On September 24, 1980, Alice Shilling Lapeze, Hiram Shilling, the children of Eugene Shilling, and Louisa Shilling (widow) entered into an Act of Correction of the 1976 lease. The property description was specifically corrected. The royalty provision was amended by increasing that interest from one-eighth (1/8) to one-sixth (1/6). The Act of Correction asserted a limiting clause which expressly and clearly states that all of the other provisions of the 1976 lease would remain in force as originally executed.

During the lease term, Amoco drilled a well on pooled land, which was "shut-in" on May 21, 1981. Under paragraph six of the 1976 lease, Amoco could maintain its rights after a well had been shut-in by resuming payments within ninety (90) days at a rate and in the manner provided for rental payments.[1] Amoco was required to make a shut-in payment by August 19, 1981. They did so on August 5, 1981, by mailing a check in the proper amount ($224.16) to the Livingston Bank. The check stub named Eugene Shilling as the payee. The check was deposited into a checking account in the name of "Mr. and Mrs. Eugene Shilling."[2]

Lapeze filed this suit in federal court (diversity jurisdiction) on July 1, 1982,[3] Hiram Shilling and the estate of Eugene's widow, intervened, as co-plaintiffs.

After trial on the merits, the district judge dismissed plaintiffs' suit. We quote:

"The court finds that Amoco, as the record owner of the lease, has never been "furnished" with the requisite documents as required by paragraph 9 of the lease.

The plaintiffs have the burden of proving the cancellation of the Oil, Gas and Mineral Lease executed by Eugene Shilling and Amoco on March 3, 1976. The plaintiffs have failed to carry their burden of proof. Therefore, this court holds that Amoco has maintained its rights under the Oil, Gas and Mineral Lease of March 1976 by timely depositing at the written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease."

This court is mindful that plaintiffs distinguish between "shut-in" royalties and "shut-in" delay rentals. However, we observe that no notice of failure to pay was made as a prerequisite to the judicial demand for dissolution.

Neither the district court nor the parties noticed the issue. But, the entire crux of plaintiffs' case is that failure to pay the shut-in to them constituted the occurrence of a resolutory condition resulting in automatic termination of the lease. A resolution of that issue would require an overview of the evolution of jurisprudence and statutory law as to the precise terms of this lease. See *Acquisitions, Inc. v. Frontier Explorations*, 432 So.2d 1095 (La.App.1983) holding that the shut-in payment provision there involved did not create a resolutory condition, but that the shut-in payments were "royalties" to which would apply the requirements of notice and delay pursuant to LSA–R.S. 31:137. We need not characterize the shut-in payments here as rental or royalty because we affirm on the straight forward determination that the payments were properly made.

1. The justification for the inclusion of such a clause, and its sanction by the courts, grows out of the difference between oil and gas. Oil can be removed from the ground and stored in tanks, moved in trucks or pipelines or tank cars. On the contrary, the only important storage place for natural gas is one of the natural underground reservoirs in which it is found. If there is no pipeline available, it must remain in the ground. Further, the lessor is not harmed if the lessee awaits a proper market, and in addition, is paid shut-in royalty during the waiting period.

2. Evidently due to failing health, Lapeze had been added to the signatories for the account in March 1981 pursuant to a power of attorney. In November or December of 1981, Alice Lapeze discovered the Amoco payment while reconciling her mother's bank account. In January 1982, she wrote Amoco inquiring as to the nature of the payment. Amoco promptly advised her that the check was a shut-in payment, pursuant to the original lease.

3. La.R.S. 31:137 (Acts 1974, No. 50, effective January 1, 1975), reads:
"If a mineral lessor seeks relief for the failure of his lessee to make timely or proper payment of royalties, he must give his lessee

Livingston Bank & Trust Company, successor to Livingston State Bank, a check numbered R1979354 to the credit of Eugene Shilling in the sum of $223.73."

Only Lapeze and Hiram Shilling have appealed.

### Did Amoco properly make the shut-in payment?

■ Plaintiffs do not dispute that the "shut-in" payment was made timely, in good faith, in the correct amount, and to the proper depository bank. Yet, they embrace, with sweeping confidence, the theory that Amoco's failure to make the $224.73 check to them rather than to their deceased father constitutes a resolutory condition resulting in the automatic termination of this very valuable mineral lease.[4]

Paragraph one of the lease provides, in part:

Payments may be made to the Lessor (earlier "Lessor" was identified as Eugene Shilling) or may be mailed or delivered for deposit to Lessor's credit in the Livingston State Bank of Denham Springs, Louisiana, *which Bank or its successor shall continue to be the depository for such rentals as the representative of Lessor and Lessor's successor and assigns; and the death or incapacity of Lessor shall not terminate or affect Lessee's right to continue to deposit all payments in said depository bank or its successor.* (emphasis added)

Paragraph nine reads:

All provisions hereof shall inure to the benefit of and bind the successors and assigns (in whole or in part) of Lessor and Lessee (whether by sale, inheritance, assignment, sublease or otherwise), *but regardless of any actual or constructive notice thereof, no change in the ownership of the land or any interest therein* or change in the capacity or status of Lessor or any other owner of rights hereunder, *whether resulting from sale or other transfer, inheri-*

*tance, interdiction, emancipation,* attainment of majority or otherwise, *shall impose any additional burden on Lessee, or be binding on Lessee for making any payments hereunder unless, at least forty-five (45) days before any such payment is due, the record owner of this lease shall have been furnished with certified copy of recorded instrument or* judgment evidencing such sale, transfer or *inheritance, or with evidence of such change in status or capacity of Lessor or other party owning rights hereunder.* (emphasis added)

Many leases contain clauses providing that upon death of a rental or royalty recipient, payment may be made to his estate until proper evidence of the identity of his successors is furnished. The recognized purpose of such clauses is "to protect the lessee against the possibility of losing a lease by reason of failure to pay rentals, royalties, or other payments to the person or persons entitled thereto after the death ... of any person entitled to receive such payment ..." 4 Williams, *Oil and Gas Law,* Section 697.8 at pp. 551–52 (1986).

Plaintiffs argue that the Act of Correction placed Amoco on notice of the change of ownership and that they (plaintiffs) should have received the shut-in payment, irrespective of Paragraph one (1) and nine (9) of the lease, and that Amoco's failure to pay them directly, was the "occurrence of an express resolutory condition," within the meaning of La.Rev.Stat.Ann. § 31:133 (West 1975), which automatically terminated the lease. The specific rationale advanced in support of this contention is based on a paragraph of the September 24, 1980 correction which reads:

"WHEREAS, Louisa C. Shilling, Alice Eugenia S. Lapeze and Hiram L. Shilling, the surviving spouse and the sole heirs of Eugene Shilling, hereafter called Lessors, and Amoco Production Company do now desire to amend said lease and

---

**4.** The stakes are high when land lies over valuable oil, gas or mineral deposits. During oral argument, defense counsel referred to it as a million dollar lease, relating that each plaintiff had already received more than $100,000 in royalty payments. These payments will continue to be received regardless of the outcome of this case.

amendment thereto in order to correctly describe the property and amend the royalties set forth therein."

True, the plaintiffs are called "lessors" in the Act of Correction. This is obviously a drafting convention used to identify the Shilling interests, much like the use of the conventional "party of the first part." The act expressly states that it is intended to "correctly describe the property and amend the royalties" of the lease. There was no "gaping hole" as to what the parties did. They reaffirmed with emphasis the original lease:

> "Except as herein specifically amended and corrected, the Oil, Gas and Mineral Lease of March 3, 1976 and the amendment thereto described above, shall remain in effect as originally executed."

Plaintiffs' argument is convoluted; it turns a blind eye to reality by confusing property interests with the contractual provisions of the lease. By acquiring ownership of the property, plaintiffs acquired the right to change the method of payment. They did not do so. Contrariwise, they explicitly agreed that the 1976 lease "shall remain in effect as originally executed."

Under the terms of Paragraph 1 of the Shilling Lease, Amoco was *required* to make the shut-in payment to the "Lessor" specified in the lease, that is, Eugene Shilling, or for deposit to his credit in Livingston Bank, the depository. They did so.

■ The judgment of possession evidencing the plaintiffs' ownership was not furnished to Amoco until after the shut-in payment was made. An agreement entered into with the purported successors of the original lessor, merely for the purposes of reforming the lease, cannot be con-

sidered valid and sufficient evidence of transfer of ownership by inheritance, where as here there was an intestate succession, without the appointment of a succession representative. Amoco had no assurance that there were no other heirs or that Mr. Shilling had not written a testament, in which case an unknown heir or legatee would not be bound.[5]

The inescapable fact is that defendant was compelled to make the payment in conformity with the specific provision of the 1976 lease. They were forbidden by the lease from taking a successors' word as to his successorship for purposes of payment (Par. 9: "regardless of any actual or constructive notice"). It has been generally accepted that the lessee's better course in such "catch 22" situations is to comply with the literal terms of the lease, regardless of the lessee's actual or constructive knowledge, and to direct payment to the original lessor until the stipulated evidence of change of ownership is furnished. "The lessee is protected when he relies on failure to furnish proof of change of ownership, but is not protected when he relies on anything else." *Bond, Delay Rental Instructions*, 140 Ok.L.Rev. 475 (1961), citing *Atlantic Refining Oil Co. v. Shell Oil Co.*, 217 La. 576, 46 So.2d 907 (1950), and *Pearce v. Southern Natural Gas Co.*, 220 La. 1094, 58 So.2d 396 (1952); *Gulf Refinery Co. v. Shatford*, 159 F.2d 231 (5th Cir.1947).

The trial court's conclusion that appellee maintained its rights under the 1976 lease by timely depositing at the Livingston Bank and Trust Company, a check to the credit of Eugene Shilling in the sum of $224.73 was eminently correct.

For this reason, the judgment of the

---

5. The judgment of possession subsequently furnished Amoco, refers to two tracts of land. One tract consists of 14.85 acres; the other consists of 29.77 acres. Both are subject to the Amoco lease. The widow, Eva Louisa C. Shilling, was sent into possession as owner of an undivided one-half (½) interest in the 14.85 acre tract and was given a usufruct over the remaining one-half (½) interest of the 14.85 acres. Hiram L.

Shilling and Alice Shilling Lapeze were sent into possession as owners of the 29.77 acre tract. Hiram and Alice were also recognized as the owners of an undivided one-half (½) interest in the 14.85 acre tract subject to the widow's usufruct. The facts revealed by this formal judgment of possession would lead even a casual observer to the inescapable conclusion that the

district court is AFFIRMED.[6]

Act of Correction did not serve as sufficient notice as to "who owned what?"

6. Appellee briefed and/or argued alternative reasons for affirming the judgment below. We are disinclined to become involved in disputes concerning state law where it is not necessary to do so, but under the facts of this case, we deem it appropriate to briefly relate several contentions. We express no opinion as to their merit.

(a) Louisiana courts refuse to cancel leases where the lessee made a good faith and reasonable effort to make the payment where there was doubt, ambiguity or misconception concerning the manner of payment. *Jones v. Southern Natural Gas Co.,* 213 La. 1051, 36 So.2d 34 (1948); *Davis v. Laster,* 242 La. 735, 138 So.2d 558 (1962); *Bayou Bouillon v. Atlantic Richfield Co.,* 385 So.2d 834 (La.App. 1980); *Nunez v. Superior Oil Co.,* 572 F.2d 1119, 1122 (5th Cir.1978), 326 F.2d 757; *Richard v. Tarpon Oil Co.,* 269 So.2d 261 (La.App. 1972).

(b) There is no "unless Clause" contained in pertinent shut-in provision of Paragraph 6 of the lease. Obviously, the parties intended to separate the delay rental obligation, expressed in "unless" terms, from the shut-in obligation, which provision has no language from which to imply automatic termination. *Davis v. Laster,* 242 La. 735, 138 So.2d 558, 562 (1962).

(c) Another provision of the lease which reinforces the parties intent to contract against automatic termination is Paragraph 11: *"after production of oil, gas,* sulphur, or other mineral has been obtained from the land or land pooled therewith (or with any part thereof), *this lease shall not be subject to forfeiture or loss,* either in whole or in part, for failure to comply with the express or implied obligations of this contract *except AFTER final judicial ascertainment* of such failure and Lessee has been given a period of sixty (60) days after such final judicial ascertainment to prevent such loss or forfeiture." (emphasis added)